**WALLING v. SANDERS et al.**

**No. 9409.**

Circuit Court of Appeals, Sixth Circuit.

June 3, 1943.

Bessie Margolin, of Washington, D. C., (Irving J. Levy, of Washington, D. C., Jeter S. Ray, of Nashville, Tenn., and Morton Liftin and Morton H. Rowen, both of Washington, D. C., on the brief), for appellant.

W. M. Fuqua, of Nashville, Tenn., (Fuqua & Cheshire, of Nashville, Tenn., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

This appeal involving the coverage of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., illustrates to an extent even greater than do others recently considered, the difficulty that confronts a court in delineating the area which Congress has taken over for national supervision of employer-employee relationships in fields hitherto considered within the domain reserved to the states, and illustrates also the persistence of administrative authority to seek the widest possible exercise of granted power. Since abandonment of old distinctions between what is national and what is local, the Congress has not, in commendable ventures in social legislation, granted to administrative bodies coextensive spheres of authority. Enforcement must therefore be kept within the limits both of constitutional and delegated power.

The present statute limits federal control of substandard labor conditions to cases where employees are "engaged in commerce or in the production of goods for commerce," and it has been well said that to search for a dependable touchstone by which to determine whether employees are within its scope is "as rewarding as an attempt to square the circle." Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638. We are also told by the same authority that the judicial task is not that of devising an abstract formula, that general propositions are less helpful and more mischievous than where boundaries must be drawn, and that the task is one of accommodation "between ex-

ertions of new federal authority and historic functions of the individual states." Yet it is made perfectly clear that even in labor relations an area of control constitutionally remains in the state, and likewise clear that the Congress did not seek to exercise its control over such relationships to the full extent of its constitutional power. Kirschbaum Co. v. Walling, supra; Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 87 L.Ed. ——. The present appeal is by the administrator charged with enforcement of the Act, and is from a decree which, while granting an injunction against the respondent in respect to certain of its employees, denied the prayer of the bill as to others, so we find ourselves in the twilight zone, and precise formula being unavailable, common sense and reason must alone determine controverted issues.

The appellee is a wholesale beer dealer of Nashville, Tennessee. The commodity it sells is trucked into Tennessee from other states, though a small portion is received by rail. Upon arrival in Nashville the beer is unloaded in the appellee's warehouse and is kept for delivery to retail customers. The delivery trucks for that purpose are owned by the appellee but are in charge of salesmen who cover definite routes each day and sell to retailers such quantities as they need. The salesmen generally employ drivers to help deliver the beer and pick up empty cases and bottles for return to the warehouse. The salesmen pay the drivers and exercise complete control over them. Though most of the drivers wear uniforms with the defendant's monogram thereon, this is not compulsory, and while such uniforms are supplied by the appellee they are paid for by the salesmen, who in turn collect from the drivers. Empty bottles and cases which are returned to the warehouse are there sorted by the appellee and returned to the out-state breweries from which they came.

The appellee also conducts another activity entirely distinct from its beer business. It sells coin-operated phonographs ("juke boxes"), pin-ball machines and cigarette vending machines purchased from without the state, to operators who place the machines in restaurants, bars, and drugstores on a profit-sharing basis. Some of the operators buy from the appellee several and some many machines though all sales are at the full price without quantity discount. The operators do not buy the machines for resale but for operation. In connection with such machines the appellee maintains a service department where the machines are repaired and reconditioned, where service parts are sold, and where records for the machines are sold not only to the operators but to the public.

The District Court found that employees who haul beer across state lines, who unload the interstate shipments, who load empty cases and bottles into trucks for interstate shipment and return to the breweries, are engaged in commerce within the meaning of the Act, and that all other employees are not. The defendant has not appealed and the issue here relates to the coverage of the Act, in respect to the drivers who deliver beer to retail customers, and as incident thereto bring back empty cases and bottles, and to those who are employed in the appellee's machine distribution business. With respect to the latter, the court held that they were employed in a retail and service establishment within the meaning of § 13(a) (2) and so exempt from the provisions of the Act.

The administrator contends that the distribution of beer by the appellee's employees is in interstate commerce; that the pick up, sorting and preparation for return to the breweries of empty cases and bottles, are in interstate commerce and also constitute production for commerce; that the drivers of the beer delivery trucks are employees of the appellee and that the machine distribution branch of the appellee's business is not a retail or service establishment within the cited exemption.

■ The court in its decision was without the guidance of the adjudications since rendered by the Supreme Court in Walling v. Jacksonville Paper Co., supra, and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. ——. Nevertheless, upon a careful consideration of these cases we conclude that the decision below, insofar as it holds the local beer distribution not part of the interstate movement of the commodity from the out-state breweries, is essentially sound. The distribution is made from stock in the warehouse, not in response to prior orders filled by special consignments from the breweries, nor from stock especially maintained for particular customers. While the turnover is rapid and the demand subject to no great fluctuation, except seasonally, the distribution falls within the third category discussed

in the Jacksonville case. Compare Alesandro et al. v. C. F. Smith Co., 6 Cir., 136 F.2d 75, this day decided. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172.

Whether a different conclusion would be necessary in respect to the local drivers of beer delivery trucks by reason of their pick up of empty cases and bottles destined ultimately for return to the out-state breweries, if such drivers were in the employ of the defendant, we have no need to decide because upon careful consideration of all of the facts and circumstances, we are not persuaded that the drivers are in the employ of the appellee rather than of its salesmen. The salesmen themselves hire the drivers and pay them out of the compensation received from the distributor. The drivers are a convenience to the salesmen. They may, if they wish, drive their own trucks, load and unload them. It is true that in arriving at a basis for compensating salesmen there have been times when the salesmen's compensation of $35 per week was designated as being made up of $25 for salary and $10 for expenses. This did not, however, preclude the salesmen from dispensing with drivers or paying more, as sometimes was done. Such designation, however, is pointed to by the administrator as an important criterion to show that the driver was the employee of the appellee. It does not follow. One might as logically urge that the porter who carries the traveling salesman's sample case from train to taxicab, or the taxicab driver who transports him to his hotel, are employees of his principal merely because the salesman puts such out-of-pocket items upon his expense account and is for them reimbursed.

The usual test by which, in common experience, men determine the employer, is to ascertain who has authority on his own account to "hire and fire." But the administrator urges that the term "employee" as here used is not a word of art but one carefully defined by the statute. He refers to § 3(e) of the Act which defines "employee" as any individual employed by an employer, and § 3(g) which defines "employ" to mean "to suffer or permit to work." Since the appellee suffers or permits drivers to work for its salesmen, ipso facto they work for it. This likewise does not follow. In so broadly defining the word "employ" Congress undoubtedly had a purpose to relieve complainants of the necessity of proving a contract of employment. The administrator desires us to construe employees so as to include not only those who work for an accused employer, but also those who work for anybody else. Manifestly this would encompass all employed humanity.

In respect to the sale of musical or vending machines to those who operate them, we likewise agree with the court below that such sales are sales by the appellee in the operation of a retail or service establishment, and so within the exemption of § 13(a) (2). The machines are not purchased for resale but for operation, and so within the common, every-day understanding of what constitutes a retail business. Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92. It is sought to have such sales considered as other than retail, by pointing to the appellee's establishment being located in a section of the city not generally devoted to the sale of merchandise at retail. The contention need only be stated to demonstrate its tenuousness. The only retail establishments intended by Congress to be excepted, it is urged, are the typical corner grocery, laundry, butcher shop, etc. We have only to say, as we did in the C. F. Smith case, supra, that the activities of the appellee are within the language of the exemption, which, so far as here considered, is without ambiguity, requiring resort to external aids to construction.

What we have said is likewise true of the contention that the servicing of cigarette vending machines is a wholesale business. The method by which such machines operate is generally known. They serve the retail customer directly without the intervention of those in whose establishments they are placed. To say that the retailer buys the cigarettes at wholesale and then sells them at retail through the instrumentality of the machine, is to completely ignore the realities. The store proprietor receives rental for the space occupied by the machine, in a percentage of its sales. He does not buy, handle, or acquire title to the cigarettes. He serves no customers and collects no purchase price. The machine is the mechanical arm of the operator who sells directly to the customer. Such sales may not otherwise be considered than as retail sales.

The decree below is affirmed.