## WALLING, Adm'r, Wage and Hour Div., U. S. Dept. of Labor, v. NASHVILLE, C. & ST. L. RY.

### No. 10070.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1946.

ALLEN, Circuit Judge, dissenting.

———◆———

George W. Jansen and Morton Liftin, both of Washington, D. C. (William S. Tyson and Bessie Margolin, both of Washington, D. C., Glenn M. Elliott, of Nashville, Tenn., and Morton Liftin and Helen Grundstein, both of Washington, D. C., on the brief), for appellant.

Walton Whitwell, of Nashville, Tenn. (Wm. H. Swiggart, Edwin F. Hunt, W. A. Miller, and Walton Whitwell, all of Nashville, Tenn., on the brief), for appellee.

Before HICKS, ALLEN, and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Appellee, The Nashville, Chattanooga & St. Louis Railway, is an interstate common carrier of passengers for hire. It operates in the States of Tennessee, Alabama, Georgia and Kentucky, and maintains offices, shops, yards and terminals at various places over its system and employs approximately 12,000 people.

On December 19, 1944, appellant filed his complaint against appellee under Sec. 17 of the Fair Labor Standards Act, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.; to restrain appellee from violating Sections 15(a) (2) and 15(a) (5) of the Act. The complaint alleged that it had violated the minimum wage and record keeping provisions of the Act with respect to 225 employees, including firemen, switchmen, stenographers, yard clerks, office clerks, messengers, callers and porters during their so-called "training periods."

Appellee's principal defense was that these "trainees" were not "employees" within the meaning of the Act.

The District Court filed findings of fact and conclusions of law and denied the relief sought, chiefly upon the authority of Walling v. Jacksonville Terminal Co., 5 Cir., 148 F.2d 768.[1]

The persons involved were in training for positions as porters, callers, messengers, stenographers and clerks, who were commonly called "posters" and as firemen, switchmen and brakemen, who were commonly called "cubs." It is uncontroverted that in each of these different positions a period of preliminary training is essential to the efficiency of the applicant therefor, as well as his safety and that of the public. It would be unthinkable to subject the lives of employees and passengers, to say nothing of property, to the hazards which would arise from the use of untrained and incompetent servants. A training period is mandatory.

Upon the question whether such persons are trainees or employees, the court found the following material facts:

"When a trainee enters upon his training, he does not regard himself as an employee, nor does the Company so regard him. He understands that he is under no obligation to become a regular employee when he finishes his training, nor is the Company under any obligation to so retain him. Whether

---

[1] See also Walling, Adm'r v. Portland Terminal Co., 1 Cir., 155 F.2d 215.

or not he remains as an employee is entirely optional with him. During the training period the Company exercises no authority or control over his activities, nor over the manner in which they are performed. He is not subject to discipline as an employee. No orders are issued to him, although he is given a suggested schedule to follow, which authorizes him to join a certain crew at a designated time. He is at liberty to do so or not, at his election. If he is absent, such absence does not in the slightest affect the movement of trains, or other work, as the trainee does no independent work and assumes no responsibility. There is always a regular employee to perform the duties of the job, who is responsible for the proper performance of the duties being learned by the student, and who receives standard pay therefor under the labor contracts. Students are present on the job solely for their own benefit and advantage, in order to qualify themselves for future employment. They are under no obligation to do any work whatever, nor even to report for duty, and when they do perform work it is not to serve the Company, but to enable them to learn the job. The regular paid employee is always there to do the work, and would do it but for the intervention of the student in his own interest. Thus the student performs no work for the benefit of the Company, nor in its interest. He simply accompanies a regular employee on the job, and from him and from the student's own practice, learns the duties of the job. The Company gains nothing from his presence as a student, other than the remote potential advantage of building up a pool of trained persons who will be available as employees when needed. This advantage is diminished to the vanishing point by the fact that it is wholly optional with the trainee whether or not he enters the Company's employ when called."

█ Without going into detail, we conclude that these findings have ample support in the evidence. They are certainly not "clearly erroneous" and we are bound by them. See Federal Rules of Civil Procedure, Rule 52, 28 U.S.C.A. following section 723c. We have heretofore consistently followed this rule. Hazeltine Corporation v. Crosley Corporation, 6 Cir., 130 F.2d 344.

There is indeed no special controversy over the facts.

█ It follows that there is presented for review a clear cut question of law, whether persons in training for the positions indicated above were "employees" of appellee during their training period within the meaning of the Fair Labor Standards Act of 1938. It is our duty to review this question; and we remain free to draw from the findings the ultimate inferences and conclusions. Letcher County v. DeFoe, 6 Cir., 151 F.2d 987, 990; Harris Stanley Coal & Land Co. v. Chesapeake & O. Ry. Co., 6 Cir., 154 F.2d 450.

█ Section 3(e) of the Act defines "employee" as an individual employed by an employer; and Sec. 3(g) defines the word "employ," to mean "to suffer or permit" the trainees to work. See Walling v. Sanders, 6 Cir., 136 F.2d 78, 81. Appellant's difficulty here is that the findings conclusively establish that appellee did not "suffer or permit" the trainees to work for it. See Walling v. Jacksonville Terminal Co., supra, 5 Cir., 148 F.2d at page 770. The fact that the trainees necessarily used the facilities of appellee during their training period does not carry an inference that they worked for appellee. If trainees are to be considered as "employees" then the long entertained concept of voluntary apprenticeship passes entirely away. The Jacksonville case, upon its facts, is in all material aspects similar to the case in hand, and we are satisfied with the reasoning thereof. To say more would constitute surplusage.

The decree is affirmed upon the authority of that case and for the reasons indicated therein.

Appellee insists that, even if the provisions of the Act are applicable to trainees as employees, nevertheless it is as a matter of fact complying with the Act and that therefore there is no real basis for an injunction. The court so held but in the view we take of the case no such holding is material to decision.

Affirmed.

ALLEN, Circuit Judge (dissenting).

I cannot concur in the conclusion of my colleagues that the cubs and posters are not

employees within the meaning of the Fair Labor Standards Act. It seems to me that § 3(g), which provides that "employ" includes "to suffer or permit to work," was drawn specifically with such loose arrangements as cubbing and posting in mind. Incidentally, the holding seems to contravene a decision of this court, Huntzicker v. Illinois Central Ry. Co., 6 Cir., 129 F. 548, which held that a trainee was the servant of the railway.

The record presents ample evidence that the cubs and posters not only were instructed as to their duties, but actually did the same work during their training period as they did upon becoming regular employees. In fact they learned the duties by working under supervision. It was the frequent practice of the railway, upon the absence of one of its regular employees, to substitute one of the cubs, and for such service to pay him the usual remuneration for that particular job. The next day this cub might be returned to his trainee status.

The District Court found that the trainees "perform work," but that this work did not benefit the Company. In at least certain instances it seems to me that there is no evidence in support of this finding. Three of the witnesses acted as cubs for periods so long, Arnold twenty-two days, Prince, five weeks, Rosenheim, six weeks, that their work must have had some value or they would not have been tolerated. Boyd, Justice and Easton had had previous railroad experience, but were compelled to cub. Childers, who had had twelve years previous experience in a shipping office, was forced to cub in clerical work more than two weeks. It is argued that the cubs were not compelled to take their training at any specific time, but while on the trains in the yards and on duty in the offices they were subject to the railroad's control. I think that work performed by such trained persons clearly benefited the company, and that there is no substantial evidence to the contrary.

However, the statutory test is not the benefit conferred but whether these cubs and posters were suffered or permitted to work. If they were they are employees. Plainly they were permitted to work, and actually did work. Since they spent time on the employer's premises subject to call at least for certain periods, the time they spent was working time within the Fair Labor Standards Act. Armour & Co. v. Wantock, 323 U.S. 126, 132, 133, 65 S.Ct. 165, 89 L.Ed. 118.

The decree should be reversed.