BOGASH et al. v. BALTIMORE CIGARETTE SERVICE, Inc.

Civ. 5191.

United States District Court
D. Maryland.

Aug. 16, 1951.

Judgment Affirmed Dec. 17, 1951.

Ellis Peregoff and Gilbert I. Friedel, of Baltimore, Md., for plaintiffs.

Weinberg & Green, of Baltimore, Md., for defendant.

COLEMAN, Chief Judge.

This is a suit brought for unpaid overtime compensation alleged to be due under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, by three employees of the defendant, the Baltimore Cigarette Service Inc., a Maryland corporation, engaged in the distribution of cigarettes, matches, and cigarette vending machines in Baltimore and elsewhere in Maryland.

The defendant company conducts its business as follows: it purchases automatic cigarette vending machines, cigarettes and matches either through an out-of-state company of which it is a subsidiary or directly from manufacturers. It then installs the machines in various places, taverns, night clubs, restaurants, etc. in Maryland under either verbal or written agreements with the owners or occupants of the particular premises, whereby the defendant company neither sells, rents nor licenses the machines but retains ownership of them and entire control over their maintenance, all money obtained from the sale of cigarettes through these machines to belong to it, the parties in whose premises the machines are installed being compensated by the defendant company by agreed rates, based upon the amount of money taken in through the machines.

Although the duties of the three plaintiffs while employed by the defendant company varied somewhat, their work as a whole may be summarized as follows: they procured locations, i. e., customers, for the installation of the machines in Baltimore and elsewhere in Maryland; they had charge of the maintenance and replacement of machines, and also adjustment of claims subject to the defendant company's approval; they were in charge of the company's employees who serviced the machines with cigarettes and matches; they were made accountable for all the money collected by these servicemen out of the machines; they had supervision of the daily work of these employees and also of all distribution of cigarettes and matches to be placed in the various vending machines, as required; and they were in charge of maintenance of the company's motor vehicles used in Baltimore. The plaintiffs' compensation ranged from $70 to $90 a week. Their work did not directly involve relations with the out of state parent company or manufacturers for acquisition of the vending machines or the cigarettes (with matches) that went into them. In short, the plaintiffs' duties were to find suitable places for the machines; then to service them and to see that the money "earned" by the machines was duly collected and deposited to the defendant company's account.

Defendant denies any liability to any of the plaintiffs primarily on the following grounds: (1) that it is a local retail and service establishment within the provisions of Section 13(a)(2) of the Fair Labor Standards Act, 29 U.S.C.A. § 213 (a)(2), and that therefore the plaintiffs, as its employees in such business are exempt by this section from the minimum wage and maximum hour provisions of the Act, 29 U.S.C.A. § 206, 207; and (2) that the plaintiffs were employed in a bonafide administrative capacity within the meaning of Section 13(a)(1) of the Act, 29 U.S.C.A. § 213(a)(1) which likewise exempts them from the operation of the Act.

We conclude that it is unnecessary to determine whether these plaintiffs are exempt from the operation of the Act by virtue of Section 13(a)(1) because we are satisfied, by the clear weight of the testimony heard, that the defendant company, during the periods here involved when it employed the plaintiffs was a "retail", if not in fact also a "service establishment" within the provisions of Section 13(a)(2) of the Act whose employees are, by that Section expressly exempted from the operation of the Act. This Section as amended in 1949 is as follows: "The provisions of section 206 and 207 of this title shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is

made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry; * *."

■ Prior to amendment by the Act of October 26, 1949, Section 13(a)(2) gave exemption to "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." It will thus be seen that the amendment has clarified the exemption by (1) defining the term "retail or service establishment", and (2) stating the conditions under which the exemption shall apply. It is perfectly clear from the testimony in the present case that both of these requisites exist. The word "retail" as used in the Act obviously is intended to modify the word "service" regardless of the use of the word "or" between them,— in other words, the provision is to be interpreted as though it read "retail selling or retail servicing establishment." It may be conceded that in the present case, the "servicing" which the defendant company performed was not of the same character as that performed by operators of a gasoline and automobile service station, for example, or by the ordinary laundry, because they "service" their customers' property,—automobiles, wearing apparel, etc.; whereas in the present case the "servicing" by the defendant company is, strictly speaking, rendered to *its own* property, i. e., its own vending machines which it neither sells, rents nor licenses. But apart from this, and returning to a consideration of the two requisites, as above explained, which Section 13(a)(2) of the Act imposes for exemption, the testimony in the present case is uncontradicted, first, that the defendant company makes *no* sales of goods or services for resale and that the only sales which it does make are retail sales of cigarettes (with matches) to the general consumer public who put their coins in the defendant company's vending machines, so it comes within the Act's definition of the type of establishment exempted. Second, the testimony is equally conclusive that all

such sales are made within the State of Maryland. There is no evidence that the defendant company sold, leased, licensed or maintained any vending machines, or sold any cigarettes or matches outside the State of Maryland.

■ On behalf of the plaintiffs it is contended that, in spite of the character of the defendant's total business as just explained, it is nevertheless "engaged in commerce" as that term is used in Sections 6 and 7 of the Act by reason of the fact that the defendant company buys its vending machines and the cigarettes (with matches) supplied through them to the public, outside the State of Maryland. However, this is not sufficient to prevent the exemption of the present plaintiffs, even if it be assumed (although not disclosed by the testimony before the Court) that the plaintiffs' duties involved these purchases. If there is a practical continuity of movement from manufacturer or supplier without the given State, through the purchaser's warehouse and on to customers whose prior orders or contracts are being filled, the interstate journey is not ended by a temporary holding of the goods at the warehouse. But the Act does not become operative merely because a business, selling intra-state, makes its purchases inter-state. Walling v. Jacksonville Paper Co., 317 U.S. 564, 569–572, 63 S.Ct. 332, 87 L.Ed. 460.

In Walling v. Sanders, 136 F.2d 78, a decision of the Sixth Circuit Court of Appeals, rendered in 1943 before Section 13(a)(2) of the Act was clarified by amendment, it was held that both the sale of musical—"juke-boxes"—or vending machines—which had been bought inter-state —to those who operated them locally, as well as the servicing locally of cigarette vending machines similarly bought but not re-sold, constituted a retail or service business within the exemption. The Court said, 136 F.2d 78, at page 81: "In respect to the sale of musical or vending machines to those who operate them, we likewise agree with the court below that such sales are sales by the appellee in the operation of a retail or service establishment, and so within the exemption of § 13(a)(2). The

machines are not purchased for resale but for operation, and so within the common, every-day understanding of what constitutes a retail business. * * *

"What we have said is likewise true of the contention that the servicing of cigarette vending machines is a wholesale business. The method by which such machines operate is generally known. They serve the retail customer directly without the intervention of those in whose establishments they are placed. To say that the retailer buys the cigarettes at wholesale and then sells them at retail through the instrumentality of the machine, is to completely ignore the realities. The store proprietor receives rental for the space occupied by the machine, in a percentage of its sales. He does not buy, handle, or acquire title to the cigarettes. He serves no customers and collects no purchase price. The machine is the mechanical arm of the operator who sells directly to the customer. Such sales may not otherwise be considered than as retail sales."

Finally, as respects plaintiffs' contention that the defendant company's operations in which the plaintiffs participated are analogous to those of a chain store system, and that therefore such decisions as A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, control, it is at once obvious that there is a very distinct factual difference. In the case just referred to, the Supreme Court held that the warehouse and central office of a very extensive interstate grocery chain store system were not a retail establishment within the meaning of Section 13(a)(2) of the Act, and that therefore the employees in such warehouse and central office did not come within the expressed or implied meaning of the exemption of that section. They, the Court said, 324 U.S. 490, at pages 497–498, 65 S.Ct. 807, at page 810, "are performing wholesale duties in the very midst of the stream of interstate commerce. They constantly deal with both incoming and outgoing interstate shipments."

For the reasons herein given, the complaint must be dismissed.