Daniel K. BURRY and Sara Burry, Plaintiffs-Appellees,

v.

NATIONAL TRAILER CONVOY, INC., Defendant-Appellant.

No. 15596.

United States Court of Appeals
Sixth Circuit.

Nov. 25, 1964.

Floyd L. Rheam, Tulsa, Okl., for appellant, Rheam & Noss, Tulsa, Okl., on brief and of counsel.

David R. Piper, Knoxville, Tenn., for appellees, Robert T. Mann, Knoxville, Tenn., on brief, Privette & Mann, Knoxville, Tenn., of counsel.

William Fauver, Atty., Dept. of Labor, Washington, D. C., amicus curiae, for W. Willard Wirtz, Secretary of Labor, United States Dept. of Labor, Charles Donahue, Sol. of Labor, Bessie Margolin, Assoc. Sol., Carin A. Clauss, Atty., Dept. of Labor, Washington, D. C., Jeter S. Ray, Regional Atty., on the brief.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

Plaintiffs, who are husband and wife, sued to recover unpaid minimum wages and overtime compensation, liquidated damages and attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Jurisdiction is conferred by 28 U.S.C. § 1337 and 29 U.S.C. § 216(b).

The case was tried before the Honorable Robert L. Taylor, District Judge, without a jury. The district court made detailed findings of fact and conclusions of law; entered judgment for plaintiffs, awarding $5,447.73 to Mr. Burry and $2,512.73 to Mrs. Burry; and fixed attorneys' fees at $2,000. Defendant has appealed. The Secretary of Labor filed a brief in this court as amicus curiae in support of the district court's conclusions of law.

Defendant, whose home office is in Tulsa, Oklahoma, is engaged in the transportation of house trailers and mobile homes throughout the country, both from manufacturer to dealer and from place to place under contracts with private owners. It maintains approximately 160 terminal offices in 45 states. In 1956 defendant set up a number of new terminals in the southeastern part of the United States, and during September of that year established a terminal at Knoxville, Tennessee. During the period here involved, this terminal consisted of an office in plaintiffs' house trailer. Mr. Burry was placed in charge of the Knoxville terminal and worked under an oral contract from 1956 until November 1,

1960, when a written contract was executed. Prior to opening the terminal, Mr. and Mrs. Burry attended a training course at defendant's establishment in Thomson, Georgia, where they were instructed in the use of defendant's tariff books, the methods of filling out freight bills and drafts, obtaining permits for contract haulers, and other details of the business.

In addition to managing the Knoxville terminal and soliciting business away from the terminal, Mr. Burry operated a truck as a contract hauler, in the transportation of mobile homes for defendant. This hauling was done under defendant's Interstate Commerce Commission permit. It was necessary that Mr. Burry be away from the Knoxville terminal for days at a time while so engaged in the transportation of mobile homes out of Knoxville and out of the state of Tennessee. The district court made an affirmative finding of fact that Mrs. Burry with the knowledge of defendant "performed all the necessary duties incident to the maintenance and operation of the Knoxville terminal when the plaintiff, Daniel K. Burry, was absent from the terminal office."

█ The district court further found that the terminal was kept open and available to the public from 8:00 a. m. until 9:00 p. m. on week days and from 8:00 a. m. until 2:00 p. m. on Sundays, and that the responsibility for managing the Knoxville terminal involved the following duties: the preparation of freight bills; paying of contract haulers or drivers working in and out of the Knoxville terminal; the relaying of trailers; checking leased equipment which consist-

ed principally of trucks owned by various contract haulers and which were leased to the defendant corporation; performing routine office work; soliciting business; and miscellaneous activities, such as receiving telephone calls from various drivers working both in and out of the Knoxville terminal, handling numerous telephone calls from prospective customers who sought information concerning tariff rates, and also handling communications between the various terminals operated by the defendant throughout the United States and communications between the home office of the defendant in Tulsa, Oklahoma, both by mail and telephone. The plaintiffs also had to prepare all necessary papers and instruments relative to hauls and transportation of mobile homes through the Knoxville terminal to satisfy the rules of the defendant corporation and to comply with Interstate Commerce Commission regulations, promulgated for this type of activity.

As to the relationship between the parties, the district court found that under the agreement and the procedure followed in the operation of the terminal, Burry was under the control of defendant and that his relationship with defendant was that of employee, not independent contractor; that it also was contemplated that Mrs. Burry would work in the Knoxville office; that defendant suffered and permitted Mrs. Burry to work for it within the meaning of the Fair Labor Standards Act with its knowledge and under such circumstances that the duty of paying compensation to her will be implied; and that Mrs. Burry was an employee of defendant within the meaning of the Act.[1]

---

1. More detailed findings of fact made by the district court as to Mrs. Burry were as follows:

"The Court also finds that Sara Burry was an employee of the defendant and that the defendant suffered and permitted her to work for it and knew that she was employed at the Knoxville terminal; that when Daniel K. Burry was employed in 1956 to manage the Knoxville terminal, both he and his wife, Sara Burry, were directed by the defendant to go to Thomson, Georgia about September or October, 1956, and there receive instructions together at the terminal office of that city owned and operated by the defendant and there both plaintiffs took a course in managerial duties to acquaint them with terminal operations and to prepare them for the management of the Knoxville terminal and they both spent some two and one-half days at this Georgia City in learning the op-

The district court found that the contract between the parties was a device to circumvent the provisions of the Fair Labor Standards Act and is, therefore, void and a nullity, and the terms of this contract cannot be invoked and relied upon by the defendant to the detriment of either of the plaintiffs; that Burry was paid on a commission basis, which failed to provide him with the minimum compensation prescribed by the Fair Labor Standards Act and did not include any compensation for his hours of overtime work; that defendant paid nothing to Mrs. Burry for her services; that the contract undertook to impose limitations upon the time to be expended by Burry in certain terminal functions; that in other areas representatives of the defendant corporation undertook verbally to circumscribe the activities of Burry from a time limitation standpoint; that the reports of time devoted to the business which Burry filed with defendant each week were inaccurate and the home office reviewed his weekly worksheet and was cognizant of the patent inaccuracies therein; that the defendant was well aware that the Knoxville terminal was being kept open hours far in excess of those shown on time reports submitted by plaintiff, Burry; that Burry is not bound by the figures contained in the various weekly time reports which he submitted to the home office of the defendant because these reports can not deprive him of minimum compensation as prescribed by the Fair Labor Standards Act; and that the defendant's representative who presented a written contract to the plaintiff for his execution, stated in substance, or led the plaintiff to believe from what he said, that if the hours stated on the time report exceeded commissions earned, then the Knoxville terminal would be closed.

On this appeal, defendant-appellant argues that Burry was an independent contractor, not an employee; that the contract was valid and binding; that Mrs. Burry was not an employee of defendant, and, if she is entitled to any compensation, it is the obligation of Burry to pay her under the terms of the contract; that plaintiffs failed to sustain the burden of proof; and that the trial court committed prejudicial and reversible error in permitting plaintiffs to introduce parol evidence to vary the terms of the written contract of employment.

This court will not overturn the decision of the district court involving issues of fact unless clearly erroneous. Rule

---

erations of the company business at Knoxville; that shortly after their return to Knoxville, one Thomas Swift, a company representative from the Georgia office, came to Knoxville and gave further help and instructions to both plaintiffs in regard to operation of the Knoxville office. Further evidence of the defendant's knowledge that Sara Burry was working in the Knoxville terminal during her husband's absence is the fact that the company representative, Abla, came to Knoxville while Daniel K. Burry was absent and talked with Sara Burry at the terminal office which she was operating at that time. From her testimony, it was found that she signed a signature card furnished by the defendant concerning the company account at the National Bank of Commerce in Tulsa, Oklahoma, and that occasionally Sara Burry paid drivers by check drawn on this bank and on the defendant's account at the National Bank of Commerce, and which

fact is confirmed by Ernest Connatser, witness for the plaintiff, who was formerly a driver at the Knoxville terminal, and who testified that he formerly worked for the defendant for a period of some five (5) years prior to January, 1962, and that he was personally aware of the fact that Sara Burry performed all the necessary duties incident to the maintenance and operation of the Knoxville terminal when the plaintiff, Daniel K. Burry, was absent from the terminal office.

"The Court finds that Donna Cottengim, representative of the defendant corporation in the home office at Tulsa, Oklahoma, wrote a letter to Daniel K. Burry on November 16, 1961, complaining about the way Sara Burry had alledgedly mishandled a situation with a customer of the company, which imputes knowledge to the corporate defendant of her activities for and on its behalf."

52(a), Federal Rules of Civil Procedure; Walling v. Nashville, Chattanooga & St. L. Ry., 155 F.2d 1016 (C.A.6), aff'd, 330 U.S. 158, 67 S.Ct. 644, 91 L.Ed. 816. We have read the entire transcript of the evidence introduced before the district judge and it is our opinion that his findings of fact as to both Mr. Burry and Mrs. Burry are not clearly erroneous, but to the contrary are supported by substantial evidence.

The definition of employee as set forth in the statute has been described as "the broadest definition that has ever been included in any one act." United States v. Rosenwasser, 323 U.S. 360, n. 3, 363,[2] 65 S.Ct. 295, 296, 89 L.Ed. 301. The holding of the district court in this case that Mr. Burry was an employee, rather than an independent contractor, is well supported by the authorities. Rutherford Food Corp v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772; United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Western Union Telegraph Co. v. McComb, 165 F.2d 65 (C.A.6), cert. denied, 333 U.S. 862, 68 S.Ct. 743, 92 L.Ed. 1141, rehearing denied, 333 U.S. 883, 68 S.Ct. 911, 92 L.Ed. 1158; Walling v. American Needlecrafts, Inc., 139 F.2d 60 (C.A.6).

The holding of the district court to the effect that defendant with knowledge suffered and permitted Mrs. Burry to work for it, so that she became an employee within the meaning of the Act, is also supported by the foregoing authorities. The statute expressly defines "employ" to include "to suffer or permit to work." 29 U.S.C. § 203(g). In Rutherford Food Corp. v. McComb, supra, the court applied the statute to boners of meat who were held to be employees of the establishment, although the contract there involved undertook to make them employees of an independent contractor. In Western Union Telegraph Co. v. McComb, supra, Western Union retained agents as independent contractors to run local offices on a commission basis. The court held that persons hired by the local agents were employees of Western Union for the purpose of the Fair Labor Standards Act. To like effect see Stewart-Jordan Distributing Co. v. Tobin, 210 F. 2d 427 (C.A.5), cert. denied, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136; Tobin v. Anthony-Williams Mfg. Co., 196 F.2d 547 (C.A.8); McComb v. McKay, 164 F.2d 40 (C.A.8). We find Barras v. Salt River Valley Water Users Ass'n., 249 F. 2d 952 (C.A.9), cert. denied, 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189, which is relied upon by defendant, to be distinguishable on its facts from the instant case.

Defendant further contends that plaintiffs cannot recover because the written contract prohibited Mr. Burry from working in excess of 40 hours per week without first obtaining defendant's written consent, and because he submitted time sheets showing fewer hours than he actually worked. The district court found as a fact that defendant had actual knowledge that Mr. Burry's hours of work exceeded those specified in the contract and shown on his time sheet, and that the contract was designed to circumvent the Fair Labor Standards Act. This is one of the findings of fact which we hold not to be clearly erroneous. An employer is obligated to pay not less than the minimum statutory wages for all hours that he knowingly "suffers or permits" an employee to work, notwithstanding any agreement to work fewer hours or to obtain authorization to work beyond the specified work period. Handler v. Thrasher, 191 F.2d 120 (C.A.10); Republican Pub. Co. v. American Newspaper Guild, 172 F.2d 943 (C.A.1). "[I]t is too well settled to admit of discussion that a contract which has for its purpose, or which has the effect of circumventing or invading the command of the Wage and Hour Act, is invalid and unenforceable." Handler v. Thrasher, supra, 191 F.2d at 123.

For the same reasons we hold that defendant cannot avoid liability by reason of the time sheets prepared by

---

2. Quoting from Senator (now Mr. Justice) Black.

Mr. Burry which defendant knew to be inaccurate. Defendant's contentions of estoppel and violation of the parol evidence rule are fallacious. As said in Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (C.A.2):

> "Appellant's contentions that plaintiff is precluded from challenging his own time sheets by estoppel and the parol evidence rule are inconsistent with both the language and the policy of the Fair Labor Standards Act.
>
> \*    \*    \*    \*    \*    \*
>
> "Appellant's argument of estoppel ignores that this case lies in an area where agreements and other acts that would normally have controlling legal significance are overcome by Congressional policy."

All other contentions made by defendant-appellant have been considered and found to be without merit.

The judgment of the district court is affirmed.