**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**DR. PEPPER BOTTLING COMPANY OF ATLANTA, Appellee.**

**No. 23233.**

United States Court of Appeals
Fifth Circuit.
March 8, 1967.

---

9. *Swain v. State of Alabama* (1964), 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 759.

10. *Witmer v. United States*, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

**6**

Bessie Margolin, Associate Sol., Robert E. Nagle, Atty., Charles Donahue, Sol., Donald Shire, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Dept. of Labor, for appellant.

Alexander E. Wilson, III, Wilson, Branch, Barwick & Wilcox, Alexander E. Wilson, Jr., Atlanta, Ga., for appellee.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

COLEMAN, Circuit Judge.

Whether certain individuals were employees of the appellee within the meaning of the Fair Labor Standards Act [1] is the sole question presented by this appeal. The District Court held that they were not. We affirm.

The District Court made extensive findings of fact, and the Secretary of Labor concedes that "[T]he evidence is essentially undisputed". The Secretary contends not that the evidentiary findings are clearly erroneous but rather that the Court erred in the legal conclusion that the individuals were not employees within the coverage and meaning of the Fair Labor Standards Act.

The Dr. Pepper Bottling Company of Atlanta is a distributor of soft drinks. It admittedly is an enterprise engaged in commerce within the meaning of § 3(s) (3) of the Act, and all of its driver-salesmen are covered by that section. The Company owned a number of trucks, each of which was driven for five days a week by these salesmen, whom we shall hereafter refer to as route salesmen. The route salesmen were paid $30 a week, plus a commission of 10 cents for each case of bottled drinks sold, with a minimum guaranteed income of $80 per week. Dr. Pepper furnished the trucks and paid all expenses of their operation, including gas and oil.

Each of the nine employees for whose benefit the action was brought had worked for some of the route salesmen. They were chosen, employed, and paid by the salesmen. The salesmen would pick up these helpers at some point away from the company plant. At the end of the work, which usually ran anywhere from eight o'clock to three o'clock, the helpers would leave the trucks before they returned to the plant. Dr. Pepper knew of

---

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended; 29 U.S.C. 201 et seq.

the employment, discouraged it, but did not prohibit it. It did advise the salesmen that they should not employ any person under eighteen years of age and, to eliminate any question on that score, should require birth certificates. The Company specifically prohibited the presence of any of these helpers on its property, a requirement scrupulously enforced. The Company did not directly or indirectly select or employ any of the helpers, nor was it in any way liable for the payment of their wages. Each helper rode with the route salesmen by whom he was employed and assisted him in loading and unloading the crates of bottles. It was an additional duty to count the crates and to watch the trucks to prevent any loss from theft or otherwise, since the route salesmen were held responsible for substantial losses of this nature. The helpers were not permitted to drive the trucks and took no part in the sales process. The employment of the helpers did not cause the sale of additional drinks. One salesman employed a helper because he had back trouble. Another salesman who had the heaviest of all the routes did not use a helper at all.

The Company's Workmens' Compensation insurance did not cover these helpers. One helper was injured while on duty, his hospital bill was paid, and certain other checks were sent to him, but the Court found "the record is confused, the original documents are not in evidence, and it does not appear whether he was paid by [the Company's] insurance carrier or not".

The Court expressly found, "as far as this Court can determine from the evidence the only benefit flowing from the employment of these helpers was the benefit to the drivers in the way of a saving in labor and a shortening in the number of hours required of the driver in completing his daily route. Drivers who employ helpers are not shown to have made more sales than drivers who did not employ them; the time saved such drivers only shortened the hours of work, but was not used in making additional sales".

It was additionally found "there is nothing in the record to indicate that the employment of helpers by the drivers was a plan, or scheme, upon the part of the defendant company to evade the Fair Labor Standards Act. There has never been a claim by any helper that the defendant had obligated itself to pay the helper his wages, but at all times the drivers, and not the defendant, were solely obligated to pay the same".

The following definitions are found in § 3 of the Act, 29 U.S.C.A. § 203 (1966):

* * * (e) "Employee" includes any individual employed by an employer * * *. (g) "Employ" includes to suffer or permit to work. * * *

In Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), the Supreme Court said, "As in the National Labor Relations Act and the Social Security Act, there is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the Act. * * * Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act".

"[U]pon the circumstances of the whole activity", the meat boners in *Rutherford* were held to be employees. The Court pointed out that the workers did a specialty job on the production line, the premises and equipment of the packing company were used for the work, there was no shifting of the work from one slaughter house to another, and the managing official of the plant kept close watch on the operation. Therefore, said the Court, "Upon the whole, we must conclude that these meat boners were employees of the slaughtering plant under the Fair Labor Standards Act".

It is at once observed, however, that the helpers in the *Dr. Pepper* case were not employed at all on company premises and were not allowed to go there. The company exercised no control over them. It is true that the route salesmen were employees of the company but they were

employed to do the entire job, it was their sole responsibility to do it, and whether or not they used the services of a helper was entirely their option.

The facts in this case are identically similar to those in Goldberg v. Webb, 192 F.Supp. 654, N.D.Miss., 1961, except that the helper in that case worked upon the bottler's premises, both loading and unloading the trucks. It was there held that the helper was an employee of the route salesman and not of the bottler.

The Secretary did not appeal this decision. The Secretary now argues, however, that the question was settled by the decision of this Court in Mitchell v. Jax Beer Distributors of Beaumont, Inc., 5 Cir., 1961, 290 F.2d 24. In the *Jax Beer* case the helpers were hired and fired by the drivers and the drivers directed their work and fixed the hours they were to work. The salesmen paid the helpers. Counsel for Jax, quite evidently referring to Stewart-Jordan Distributing Company v. Tobin, 5 Cir., 1954, 210 F.2d 427, cert. den., sub. nom. Stewart-Jordan Distributing Company v. Mitchell, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136, stipulated in the District Court, "Your Honor, we don't believe it is necessary for the Government to prove all of these things. We admit the employment, and the Fifth Circuit has held under facts identical to this that there is employment. There is no question about that".

The present controversy, however, is not a *Stewart-Jordan* case. Leaving aside the many dissimilarities in methods of operation and the nature of the employment as described in that case, the really controlling factor there appears very clearly to have been that the company had originally considered the helpers to be its employees, had paid their wages directly, and had kept records accordingly. When the company was informed that the Wage and Hour Division considered these employees to be within the coverage of the Act, the helpers thereafter received their wages from the drivers and the drivers got a "bonus" from the company of exactly the amount required to pay the helpers. The District Judge held this to be "a mere subterfuge" and this Court said that he was on firm ground in so holding.

It is apparent, therefore, that the rationale of Goldberg v. Webb, supra, is not in conflict with that of the *Stewart-Jordan* and *Jax Beer* cases.

■ Although we might well do so, we do not rely solely upon Goldberg v. Webb, supra. We apply the reasoning used by the Supreme Court in *Rutherford*, looking to "the usual path of an employee" and weighing the controversy by an analysis of the entire situation ["upon the whole"]. We begin by recognizing that common law concepts of the employer-employee relationship are not controlling.

The following items in the path could indicate that the helpers were employees of Dr. Pepper:

1. They admittedly assisted employees of Dr. Pepper;

2. They rode trucks belonging to Dr. Pepper;

3. They assisted in the distribution of Dr. Pepper products.

The following items could indicate to the contrary:

1. The company did not select the helpers, had no control over their work, did not hire them, could not fire them, did not pay them, carried no insurance on them, and was wholly indifferent, so far as this record is concerned, as to whether the route salesmen used them;

2. The helpers did no work on company premises;

3. Since the route salesmen were hired and paid to handle the routes as their whole sole responsibility, the helpers contributed nothing to the company operation. The route salesmen were the true beneficiaries of their services.

■ In the light of these considerations we are of the view that the District Court was right in holding that the helpers were not, within the meaning of the Act, employees of Dr. Pepper.

Affirmed.