**John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**DR. PEPPER–PEPSI COLA BOTTLING CO. OF DYERSBURG, TENNESSEE, INC., Defendant-Appellee.**

No. 75–1579.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1975.

Decided Feb. 12, 1976.

Marvin M. Tincher, U. S. Dept. of Labor, Nashville, Tenn., Donald S. Shire, Jacob I. Karro, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Joseph K. Willcox, Memphis, Tenn., for defendant-appellee.

Before WEICK, McCREE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The Secretary of Labor (Secretary) appeals from a judgment of the district court denying relief under the Fair Labor Standards Act (the Act) with respect to helpers on soft drink delivery trucks. The judgment was based on the district court's holding that helpers are not employees of the defendant bottling company within the meaning of the Act. The court found that defendant had violated the Act with respect to a number of employees in various classifications and granted appropriate relief. The company has not appealed.

■ In his Memorandum Decision Chief Judge Bailey Brown upon "examination of the whole activity" made a number of findings of fact concerning use of helpers by the route salesmen employed by defendant. Our study of the record and transcript of hearing convinces us that these findings are based on substantial, though conflicting, evidence and are not clearly erroneous. Rule 52(a), Fed.R.Civ.P. The parties stipulated in a pretrial order that if the helpers are employees of defendant, various violations of the Act did occur during the period covered by the complaint. Therefore, our task is to determine whether the district court properly concluded that the helpers are not employees of defendant within the meaning of the Act.

It was stipulated that the route salesmen (truck drivers) are employees of defendant. The district court found that some of the eleven salesmen use no helpers, some use them occasionally and others, frequently. Each salesman is paid on a straight commission basis and helpers are always paid by the salesman who hires them. The defendant does not adjust the compensation of the salesmen in any way to provide pay for helpers. The defendant has forbidden helpers from doing any work on the premises of its plant, though some of them are picked up and dropped off by the salesmen near the plant. Some salesmen use their wives and children as helpers. Many different helpers have been used by some of the salesmen. Often they were picked up in the morning without any pre-arrangement. Though defendant is aware of the use of helpers and discouraged the practice, salesmen were never forbidden to use them. The district court specifically found that the use of helpers does not affect defendant's sales, but only reduces the time required for salesmen who use them to cover their routes and that there was no indication that the salesmen could not complete their days' work without the assistance of helpers.

There was evidence that the defendant had caused its workmen's compensation insurance carrier to make a $16.00 payment to a helper who was hurt while working on one of its trucks. However, this helper had formerly been an employ-

ee of the defendant and the court found that there was "confusion" concerning the reason for this payment.

Though the District Judge noted that the work of the helpers is not performed on defendant's premises, this was not considered conclusive. Nor was the fact that defendant neither hires nor fires helpers, and does not set their wage rates or hours of work, treated as decisive. Instead, the court stressed that it looked at the "whole activity" and "the situation in its entirety" in reaching the conclusion that the helpers who assist its route salesmen are not employees of defendant.

■ The Act defines "employ" in the broadest possible terms—"to suffer or permit to work." 29 U.S.C. § 203(g). Nevertheless in numerous instances the courts have found it necessary to decide on a case-by-case basis whether or not a particular relationship was that of employer and employee. The language of the Act precludes making the decision solely on the basis of whether the traditional attributes of master and servant are present. *Walling v. American Needlecrafts, Inc.*, 139 F.2d 60, 63 (6th Cir. 1943). In *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947), after considering a number of facts presented by that case, some of which indicated an employer/employee relationship under traditional criteria, the Court stated:

> We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity.

In *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961), the Court followed the "economic reality" test first enunciated in *Rutherford, supra,* and considered many circumstances including the pervasive control exercised by the employer over the work of those sought to be treated as employees.

Circuit court cases which are factually similar to the present one, in which persons assisting route salesmen on delivery

trucks were held not to be employees are *Walling v. Sanders*, 136 F.2d 78 (6th Cir. 1943), and *Wirtz v. Dr. Pepper Bottling Co. of Atlanta*, 374 F.2d 5 (5th Cir. 1967). The Secretary argues that *Walling v. Sanders* was "effectively overruled" by the Supreme Court decision in *Rutherford*. Nevertheless, after the *Rutherford* decision had been rendered, this court took pains to distinguish *Walling v. Sanders* in its decision in *Western Union Telegraph Co. v. McComb*, 165 F.2d 65 (6th Cir. 1947), *cert. denied*, 333 U.S. 862, 68 S.Ct. 743, 92 L.Ed. 1141 (1948), in which *Rutherford* was cited for the proposition that the operation as a whole must be considered in determining whether a person is an employee.

In a similar vein the Secretary urges us to treat *Wirtz v. Dr. Pepper* as an anomaly, pointing out that the Fifth Circuit reached a different result in *Hodgson v. R. C. Bottling Co., Inc.*, 465 F.2d 473 (1972). The facts in that case are quite different from those in *Wirtz v. Dr. Pepper* and the present case. In *Hodgson v. R. C. Bottling* the drivers were paid an extra amount to cover the wages of helpers, the helpers regularly went to the bottling plant on Saturdays to clean the trucks and waited on customers while there, the defendant's bookkeeper calculated the wages of the helpers and furnished the drivers with pay envelopes for the helpers and the helpers were carried on the company's payroll records along with its admitted employees. Furthermore, the helpers loaded and unloaded trucks at the bottling plant under the general supervision of the plant superintendent and at least one helper had been fired by the president of the defendant bottling company. None of these factors indicating an employer-employee relationship was found to be present in *Wirtz v. Dr. Pepper* or the present case.

Not relying entirely on the result in *Hodgson v. R. C. Bottling*, the Secretary contends that the Fifth Circuit now applies a different test from that used in *Wirtz v. Dr. Pepper* and that court would reach a different result on the

same facts if the case were decided to-day. He argues that the "economic reality" test is concerned only with whether the worker is dependent on the purported employer for his living. This position is based largely on the opinion in *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975). In that case a former employee who was permitted to operate cardrooms on the premises of an apartment house-hotel exclusively for tenants, their guests and customers of a restaurant on the premises was claimed to be an independent contractor rather than an employee of the hotel. This had been Mednick's regular, full-time occupation for at least three years when the suit was filed and he had several employees of his own who worked when he was off. In determining that Mednick was an employee rather than an independent contractor the court quoted from *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947), as follows:

> [I]n the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service.

It appears to us that *Mednick, supra,* presented an ideal factual picture for application of the *Bartels* test and we would see no inconsistency with the decided cases of this circuit in so applying it. However, the record before us is quite different. For all that is shown the sporadic work of helpers on defendant's trucks was not necessarily the primary, much less the sole occupation of any of the workers in question. Approximately one-half of the helpers identified in the transcript were close relatives of the route salesmen for whom they worked. As to the non-related helpers, there was no showing at all of actual dependence upon defendant. Their work was intermittent and unscheduled. Some drivers never used helpers and others used them frequently. One driver estimated that he had used 80 or 90 different helpers in a period of 2½ to 3 years. Though the non-related helpers

may be the kind of persons who are "dependent upon finding employment in the business of others . . . ," *Mednick, supra* at 301 quoting from *Fahs v. Tree-Gold Co-op Growers of Florida, Inc.,* 166 F.2d 40, 44 (5th Cir. 1948), there is no showing in the record that they were in fact dependent on defendant. Actually, the relationship of Mednick to the hotel was more like that of the drivers, who are admittedly employees of the defendant in the present case, than that of the helpers.

We do not read *Mednick* to hold that economic dependence on the purported employer is the sole test for determining the existence of an employer-employee relationship. In light of the purpose of the Act, it is a factor which must be given careful consideration. However, the authoritative decisions require that the courts consider the total relationship rather than isolated factors. A consistent theme that runs through many of the cases is that a worker is an employee of another person or enterprise if his work is an integral part of the operations of that person or enterprise. In *Rutherford* the workers did a special job on a production line. In *Goldberg v. Whitaker House, supra,* and *Walling v. American Needlecrafts, supra,* the workers produced most of the items which the employer, a cooperative, sold and distributed. In *Western Union v. McComb* the "9-A agents" were the actual operators of telegraph offices which were connected to and part of Western Union's national system. In *Burry v. National Trailer Convoy, Inc.,* 338 F.2d 422 (6th Cir. 1964), the workers, man and wife, were the manager and operator of a terminal which was part of an interstate system for transporting mobile homes.

The district court found that the helpers in the present case were a convenience for the drivers who hired and paid them, but that there was no showing that the drivers could not have done their assigned work each day without helpers. They were not an integral part of the operations of defendant, and their

elimination would only have resulted in longer work days for the drivers. The District Judge clearly weighed many factors and reached his conclusion that the helpers are not employees of defendant on the basis of the total operations and relationships. His conclusion is based on tests laid down by the Supreme Court and this court in decisions cited herein.

Affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent because I believe that the majority opinion fails to state a standard useful for determining whether the helpers are Dr. Pepper's employees. The cases which formulated the standard relied upon in the opinion arose out of a different factual setting that required a determination whether persons for whom the benefits of the FLSA were sought were employees or independent contractors. Here, in contrast, the question is whether persons hired by acknowledged employees to assist them with their work thereby become, for purposes of the Act, employees of the principal employer.

Since our 1943 decision in *Walling v. Sanders*, 136 F.2d 78, there has been a shift in judicial interpretation of the FLSA, from a strict construction suggesting hostility toward the purposes of the Act,[1] to a liberal construction intended to carry out its remedial purposes. *See, e. g., United States v. Silk*, 331 U.S. 704, 712, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), *cited in Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

As the Supreme Court stated in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706–707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945):

The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided. [Footnotes omitted].

The Court noted that:

The legislative debates indicate that the prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage. 81 Cong. Rec. 7652, 7672, 7885; 82 Cong.Rec. 1386, 1395, 1491, 1505, 1507; 83 Cong. Rec. 7283, 7298, 9260, 9265. See also H.Rep.No.1452, 75th Cong., 1st Sess., p. 9; S.Rep.No.884, 75th Cong., 1st Sess., pp. 3–4. 324 U.S. 707 n. 18, 65 S.Ct. 902.

In order to achieve this goal, Congress adopted a definition of employment that Senator (later Justice) Black described as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363

---

1. For example, in *Walling v. Sanders*, 136 F.2d 78 (6th Cir. 1943), the court stated:

This appeal involving the coverage of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., *illustrates to an extent even greater than do others recently considered, the difficulty that confronts a court in delineating the area which Congress has taken over for national supervision of employer-employee relationships in fields, hitherto considered within the domain reserved to the states,*

*and illustrates also the persistence of administrative authority to seek the widest possible exercise of granted power. Since abandonment of old distinctions between what is national and what is local,* the Congress has not, in commendable ventures in social legislation, granted to administrative bodies coextensive spheres of authority. Enforcement must therefore be kept within the limits both of constitutional and delegated power. 136 F.2d 78 [Emphasis added].

n. 3, 65 S.Ct. 295, 296, 89 L.Ed. 301 (1945), *quoting* 81 Cong.Rec. 7657. It defined "employ" as "to suffer or permit to work." As the majority opinion recognizes, this language was used to evidence intent to regulate more than the common law employer-employee relationship. Nevertheless, the government is still required to show justification for making the putative employer responsible. *Cf. Walling v. Sanders, supra.*

In view of the congressional purpose, I would hold that despite the standard applied in other contexts, when the question is whether a person hired by an acknowledged employee thereby becomes an employee of the principal employer, the following test should be applied. A person is employed within the meaning of the Act when, with the knowledge and forbearance of the putative employer, he performs, in the furtherance of that employer's business, work that confers a substantial benefit on that business. The benefit conferred may include increasing the efficiency of the employer's business, enhancing the quality of its work product, increasing its profitability, and improving the working conditions of its acknowledged employees.

Applying this test, I would hold that at least some of the helpers were employees of Dr. Pepper for the purpose of the Act. We need not discuss the status of the helpers who were relatives of the route salesmen whom they assisted, because, as the district court memorandum opinion states, "where helpers were wives and children of route salesmen, plaintiff is not seeking minimum wage relief." In arriving at this conclusion, I would hold clearly erroneous the trial court's finding that the helpers conferred no economic benefit on the putative employer because they were "simply a convenience to the route salesmen." The president of the company testified that the company benefited from tolerating the use of helpers by the route salesmen because thereby it was able to attract better qualified applicants. Further, Thomas Quick, a route salesman, testified that when he used a helper he finished his regular calls more quickly, and then made additional calls, selling more soda pop, and increasing both his own commissions and the company's profits. Several witnesses testified that the use of helpers permitted the salesmen to finish their routes earlier, so that they had more free time. No witness testified that the use of helpers conferred no benefit on the company.

Further, the uncontested evidence also shows the company's knowledge of the practice and its forbearance. It "discouraged" but did not prohibit the use of helpers. In fact, the company actually regulated the use of the helpers by instructing the route salesmen not to employ a helper under the age of 16, and forbidding the helpers' entry into the plant.

This test is consistent with the result reached in our most recent decision, *Burry v. National Trailer Convoy, Inc.*, 338 F.2d 422 (6th Cir. 1964), and with the results in *Rutherford Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), *Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), and *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961), the Supreme Court cases cited in the majority opinion, which considered only whether a worker was an employee or an independent contractor. In each of these cases the persons held to be employees were performing work, in furtherance of the employer's business, and with his knowledge and forbearance, that substantially benefited his business.

I would not follow *Wirtz v. Dr. Pepper Bottling Co.*, 374 F.2d 5 (5th Cir. 1967), which held on facts similar to those in this appeal that helpers who were hired by route salesmen to assist them were not employees of the distributor. Without analysis, that court uncritically applied a test derived from cases attempting to distinguish independent contractors from employees.

In my view, some of the helpers are employees of Dr. Pepper within the

meaning of the FLSA, and I would reverse and remand to permit the district court to apply that test.