RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

WILLIAM ELLINGTON,

      *Plaintiff-Appellant,*

    *v.*

No. 11-3700

CITY OF EAST CLEVELAND; ERIC J. BREWER,

      *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-cv-311—Solomon Oliver, Jr., Chief District Judge.

Argued: May 30, 2012

Decided and Filed: August 6, 2012

Before: DAUGHTREY and CLAY, Circuit Judges; CLELAND, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Bruce B. Elfvin, ELFVIN BESSER, Cleveland, Ohio, for Appellant. Ronald K. Riley, CITY OF EAST CLEVELAND, East Cleveland, Ohio, for Appellees. **ON BRIEF:** Bruce B. Elfvin, Barbara Kaye Besser, Stuart Torch, ELFVIN BESSER, Cleveland, Ohio, for Appellant. Ronald K. Riley, CITY OF EAST CLEVELAND, East Cleveland, Ohio, for Appellees.

_____

## OPINION

_____

CLELAND, District Judge. In August 2008, Plaintiff William Ellington accepted the position of Deputy Clerk of the City Council of East Cleveland and walked into a political crossfire. The City Council wanted him in, but the then-Mayor, Defendant Eric

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Brewer, stood in the way. Not until November 2008, after the resolution of an approximately three-month-long standoff between the City Council and the Mayor, did Ellington begin receiving regular paychecks and compensation for wages unpaid since he had begun performing services.

Ellington later filed this lawsuit in the United States District Court for the Northern District of Ohio alleging that Defendants' failure to issue him paychecks between August 2008 and November 2008 violated the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, article II, section 34a of the Ohio Constitution (Section 34a or § 34a); and the Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio Rev. Code §§ 4111.01–.99. On cross-motions for summary judgment, the district court concluded that Ellington, as an employee of the City Council, was subject to the "legislative employee" exclusions to the federal and state minimum wage and overtime provisions and granted summary judgment in favor of Defendants. In this matter of first impression in this Circuit, we **AFFIRM**.

## I. BACKGROUND

On August 5, 2008, the City Council for the City of East Cleveland ("City Council") interviewed Ellington for the position of Deputy Clerk of City Council ("Deputy Clerk"). Following the interview, the City Council convened an executive session closed to the public and selected Ellington to fill the position of Deputy Clerk. The next day Ellington accepted the offer from the Clerk of City Council, Melvin Davis. Ellington reported to work on or around August 11, 2008. During a special meeting on August 14, 2008, the City Council ratified its offer of employment to Ellington. Present at the meeting were Almeta Johnson, the Law Director of the City of East Cleveland, and the then acting Mayor, Eric Brewer. After the meeting, Mayor Brewer refused to sign Ellington's Personnel Transaction Form and directed city employees to refrain from issuing paychecks to Ellington.[1]

---

[1]The parties offer competing averments regarding the motive behind Mayor Brewer's actions. According to Ellington, Mayor Brewer expressed personal objections to the hiring of Ellington during an executive session of the City Council on August 28, 2008. Defendants, alternatively, contend that Mayor Brewer was simply following the advice of Johnson, who informed Mayor Brewer that the City Council's

In spite of Mayor Brewer's refusal to sign off on Ellington's hiring, Ellington continued to report to work from August 2008 to November 2008 and received assignments from City Council members and Davis, but all this while he received no paychecks.

Ellington initiated a lawsuit against Defendants in the Cuyahoga County Common Pleas Court in October 2008 seeking recovery of unpaid wages. Two days after Ellington commenced the lawsuit in state court, the City Council held another special meeting and passed a resolution commanding that Ellington be paid for his work as Deputy Clerk. Mayor Brewer vetoed the resolution and again refused to authorize the issuance of paychecks to Ellington. The standoff between the City Council and the Mayor finally reached a resolution on November 19, 2008, when Mayor Brewer signed a City Council resolution authorizing the payment of unpaid wages in the amount of $8,674.27 to Ellington.

In October 2009, nearly a year after Mayor Brewer authorized payment of Ellington's unpaid wages, a panel conducting court-sponsored arbitration in the state-court lawsuit awarded Ellington $17,348.54 in damages. Defendants apparently appealed the arbitration award in the common pleas court and sought a trial *de novo* on Ellington's claims. Ellington voluntarily dismissed without prejudice the state-court action, and filed a verified complaint in the United States District Court for the Northern District of Ohio, alleging that Defendants failed to pay minimum wages and overtime in violation of federal and state labor law. In October 2010, Ellington and Defendants filed independent motions for summary judgment. The district court granted Defendants' motion and denied Ellington's, finding that Ellington did not qualify as an "employee" subject to the protections of the FLSA, § 34a, or the OMFWSA. Ellington appeals this order.

---

August 5 executive session and August 14 special meeting violated Ohio's "Sunshine Law." The district court did not address this apparent disputed fact. Because Mayor Brewer's motive is irrelevant to a determination of whether Ellington qualifies as an employee under the FLSA, the issue does not preclude the grant of summary judgment to Defendants.

## II.  ANALYSIS

### A.  Standard of Review

We review *de novo* a district court's grant of summary judgment.  *United Steelworkers v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007).  Under Federal Rule of Civil Procedure 56, summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008) (internal quotation marks omitted).  The moving party "bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact."  *Id.* at 389–90 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Where the moving party carries its initial burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

### B.  Discussion

Ellington asserts two claims of error on appeal.  First, he challenges the district court's finding that the "legislative employee" exclusions to the FLSA, the OMFWSA, and § 34a applied to his position as Deputy Clerk.  And, second, he argues that the district court did not appropriately construe the facts in a light most favorable to him as is required by Federal Rule of Civil Procedure 56.

*1.  "Legislative employee" exclusions under the FLSA, the Ohio Constitution, and the OMFWSA*

*a.  The FLSA*

In 1938, Congress enacted the FLSA to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  The FLSA requires, *inter alia*, employers to pay employees engaged in commerce a wage consistent with the minimum

wage established by the Act, *id.* § 206(a), and "provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate of not less than one-and-one half times their regular pay," *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009) (citing 29 U.S.C. § 207(a)(1)).  The Supreme Court has indicated that the FLSA is to be construed liberally, "recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency."  *Tony & Susan Alamo Found. v. Sec'y of Labor* (*Alamo*), 471 U.S. 290, 296 (1985) (citing *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516 (1950)).

In spite of the expansive nature of the FLSA's coverage, the Act expressly defines "employee" so as to exclude a number of groups of working individuals from its provisions.  *See* 29 U.S.C. § 203(e) ("Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer.").  Individuals who work for a state or a political subdivision thereof are not "employees" under the Act if they are not subject to the state's or political subdivision's civil service laws and fall within one of the following enumerated exclusions established by Congress: (1) elected officials, *id.* § 203(e)(2)(C)(ii)(I); (2) individuals who are chosen by an elected official to be a member of his or her personal staff, *id.* § 203(e)(2)(C)(ii)(II); (3) individuals appointed to a policymaking position by an elected official, *id.* § 203(e)(2)(C)(ii)(III); (4) immediate advisors to elected officials who counsel the official on his or her constitutional or legal powers, *id.* § 203(e)(2)(C)(ii)(IV); and (5) employees of the legislative branch or legislative body of a State or political subdivision that are not employed by a legislative library, *id.* § 203(e)(2)(C)(ii)(V).  Although an individual may be subject to more than one exclusion under § 203(e)(2)(C)(ii)—consider, for example, a city council member who is presumably both an elected official and an employee of the legislative body of a political subdivision—courts have developed independent standards to determine whether a given exclusion applies to an individual employed by a state or political subdivision.  *See, e.g.*, *Birch v. Cuyahoga Cnty. Probate Ct.*, 392 F.3d 151, 158–61 (6th Cir. 2004) (applying separate standards to determine whether the

"personal staff" and "policymaker" exclusions to the FLSA and Title VII of the Civil Rights Act of 1964 applied to a probate court magistrate); *c.f. Nichols v. Hurley*, 921 F.2d 1101, 1108 (10th Cir. 1990) (declining to adopt Fourth Circuit's "personal staff" exclusion analysis because it mistakenly considered "factors that concern two other exceptions to the definition of employee, not the personal staff exception").

Relevant to this case is the exclusion from coverage of individuals employed by the legislative branch or body of a political subdivision:

> (2) In the case of an individual employed by a public agency, [employee] means—
>
> . . .
>
> > (C) any individual employed by a State, political subdivision of a State, or an interstate governmental agency, *other than such an individual*—
> >
> > > (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
> > >
> > > (ii) who—
> >
> > . . .
> >
> > > > (V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency.

29 U.S.C. § 203(e) (emphasis added). Although this case provides us with the first opportunity to interpret and apply the "legislative employee" exclusion, the statutory language is unambiguous. The exclusion has three conjunctive elements: (1) the individual must be employed by a state or a political subdivision thereof; (2) he or she must not be subject to the civil service laws of the State or political subdivision; and (3) he or she must be employed by the legislative branch or body of a State or political subdivision but not by a legislative library. When these elements are satisfied, a plaintiff

does not fall within the coverage of the FLSA and may not maintain a claim under the Act.

Ellington does not contest the district court's conclusion that the first two elements of the exclusion are satisfied in this case. As to the first element, the district court observed that both sides, despite disagreeing as to who Ellington's ultimate employer was, acknowledged that Ellington was employed by a political subdivision of the state. *Ellington v. City of E. Cleveland*, No. 10-CV-311, 2011 WL 2149364, at \*4 (N.D. Ohio May 31, 2011) (unpublished). Nor is it disputed that the civil service laws of Ohio and the City of East Cleveland do not apply to Ellington's position as Deputy Clerk. The district court, after examining Ohio law and the City of East Cleveland's Charter, found that "[Ellington's] employment is an 'unclassified' position under the Charter, and [Ellington] has not offered any evidence to rebut case law and Defendants' evidence that the civil service laws do not govern 'unclassified' employees in Ohio." *Id.*

Ellington argues that the district court erroneously found the third element of the exclusion satisfied by ignoring the holding in *Birch*, a case he contends is binding precedent and precludes a finding that he is a legislative employee. *Birch*, however, is not controlling in this case, as it only addressed the scope of the "personal staff" and "policymaking" exclusions of the FLSA. It does not discuss, nor even cite, the FLSA's "legislative employee" exclusion. *See Birch*, 392 F.3d at 158–61. Ellington's entire argument that the district court applied the wrong analysis is premised on conflating the FLSA's "legislative employee" exclusion with its "personal staff" exclusion. Were we to accept Ellington's contention that *Birch's* "personal staff" analysis applies equally to the determination of whether an individual is a legislative employee, the "legislative employee" exclusion would become mere surplusage in the FLSA, a result we must avoid if at all possible when interpreting statutory provisions. *See Astoria Fed. Sav. & Loans Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) ("[W]e construe statutes, where possible, so as to avoid rendering superfluous any parts thereof."); *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible,

to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."). Thus, *Birch* is not binding precedent in this case.

Because the City Council is undoubtedly the legislative body of the City of East Cleveland, *see* City of East Cleveland Charter § 98 ("The legislative power of the City, except as limited by this Charter, shall be vested in a Council consisting of five members."), the exclusive inquiry with respect to the third element is whether an employment relationship existed between Ellington and the City Council. This inquiry is no different than the one courts make when determining generally whether a defendant is an "employer" of a plaintiff so as to permit recovery under the FLSA against the defendant.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "'The remedial purposes of the FLSA require the courts to define "employer" more broadly than the term would be interpreted in traditional common law applications.'" *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir.1989) (per curiam)). In other words, the employment relationship determination "is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes." *Powell*, 339 U.S. at 528. Instead, the "economic reality" of the relationship between a plaintiff and a defendant "determines whether their relationship is one of employment." *Solis v. Laurelbrook Sanitarium & Sch. Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) (citing *Alamo*, 471 U.S. at 301).

This "economic reality" standard, however, is not a precise test susceptible to formulaic application. *See Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984). It prescribes a case-by-case approach, whereby the court considers the "circumstances of the whole business activity," *id.*; *see Dunlop v. Dr. Pepper-Pepsi Cola Bottling Co. of Dyersburg, Tenn.*, 529 F.2d 298, 301 (6th Cir. 1976) (stating that in applying the economic reality standard, "the authoritative decisions require that the courts consider

the total relationship rather than isolated factors"). Relevant factors to consider may include whether the plaintiff is an integral part of the operations of the putative employer, *Dr. Pepper-Pepsi Cola*, 529 F.2d at 301; the extent of the plaintiff's economic dependence on the defendant, *id.*; the defendant's "substantial control of the terms and conditions of the work" of the plaintiff, *Falk v. Brennan*, 414 U.S. 190, 195 (1973); the defendant's authority to hire or fire the plaintiff, *Braddock v. Madison Cnty.*, 34 F. Supp. 2d 1098, 1107 (S.D. Ind. 1998) (citing *Barfield v. Madison Cnty.*, 984 F. Supp. 491, 497 (S.D. Miss. 1997)); and whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment, *id.* Consistent with the case-by-case approach prescribed by *Donovan*, these factors are not exhaustive and "'[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case.'" *Dole*, 942 F.2d at 966 (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 195 (5th Cir. 1983)).

Here, the economic realities of Ellington and the City Council's relationship overwhelmingly support a finding that an employment relationship existed. First, the City Council had substantial authority to hire and fire Ellington. The City Council interviewed Ellington, offered him the position of Deputy Clerk, and tirelessly worked to ensure that he was compensated for his services. Plenary authority to remove Ellington from the position was also vested in the City Council: "The Deputy Clerk shall hold office at the pleasure of Council and shall be removable from office at any time by vote of a majority of the members of the Council with or without cause, and no reason need be given for discharge." (Deputy Clerk of Council Job Posting.) Second, as Deputy Clerk, Ellington's duties and work assignments directly corresponded to the activities of the City Council. Ellington received his work assignments from individual members of the City Council and the Clerk of Council, and the Deputy Clerk's duties, as set forth in the position's job posting, included: (1) serving all members of the City Council equally; (2) being informed of all matters concerning the City Council so that in the absence of the Clerk of Council, the Deputy Clerk may effectively administer the City Council's affairs; and (3) preparing periodic reports for the City Council. Only one

conclusion can be drawn from these facts: Ellington was an employee of the City Council.

Ellington, relying on the factors addressed in *Birch's* analysis of the "personal staff" and "policymaker" exclusions under the FLSA and Title VII, *see Birch*, 392 F.3d at 158–61, argues that, as Deputy Clerk, he was not a legislative employee because the City Council's power to hire him was not absolute, his professional relationship with the City Council was not intimate, he did not represent the City Council in the eyes or the public, his job duties were entirely administrative and clerical in nature, and he did not formulate policy or draft legislation. In the first instance, contrary to Ellington's contentions, the record suggests that his working relationship with the City Council was, in fact, intimate. Ellington received assignments directly from council members and was responsible for administering the affairs of the City Council when the Clerk of Council was absent. Moreover, although the City Council may not have had "plenary" control of his hiring, the record clearly reflects the City Council's substantial involvement in his hiring.

Additionally, unlike the "policymaker" exclusion, Ellington's lack of involvement in the development of legislation is immaterial to determining whether the City Council was his employer. Nor does the purported administrative and clerical nature of his duties affect the employment relationship determination. The language of the "legislative employee" exclusion is categorical: where an individual is employed by the legislative branch or body of a state or political subdivision and is not subject to the civil service laws of that State or political subdivision, he is excluded from FLSA coverage, irrespective of the fact that the individual may not be a policymaker or on the personal staff of an elected official. The district court's conclusion that Ellington was employed by the City Council, and thus not an "employee" as that term is defined by the FLSA, was correct.

### b. The Ohio Constitution and the OMFWSA

The district court also correctly held that Ellington's state-law claim fails because he is excluded from the wage and overtime protections afforded by the Ohio Constitution and the OMFWSA. Article II, section 34a of the Ohio Constitution states, in relevant part, that Ohio employers must pay their employees working in the State a specified minimum wage and provides that "[l]aws may be passed to implement [the section's] provisions and create additional remedies, increase the minimum wage rate and extend the coverage of the section." The OMFWSA is one such law the state legislature has passed to implement the provisions of § 34a. The OMFWSA reaffirms the minimum wage rate established in the Ohio Constitution, Ohio Rev. Code § 4111.02, and further guarantees employees overtime pay, Ohio Rev. Code § 4111.03. Like the FLSA, both § 34a and the OMFWSA limit the scope of the minimum wage and overtime provisions to individuals who qualify as "employees." They also both expressly adopt the FLSA's definition of "employee." Ohio Const. Art. II, § 34a ("As used in this section . . . "employee" . . . [has] the same meaning[] as under the federal Fair Labor Standards Act . . . ."); Ohio Rev. Code § 4111.14(B) ("In accordance with Section 34a of Article II, Ohio Constitution, the term[] . . . 'employee' . . . [has] the same meaning[] as in the 'Fair Labor Standards Act of 1938' . . . . As used in division (B) of this section . . . '[e]mployee" means individuals employed in Ohio, *but does not mean individuals who are excluded from the definition of "employee" under 29 U.S.C. 203(e) . . . .*" (emphasis added)). Accordingly, this court having already determined that Ellington was not an "employee" under the FLSA, he also does not qualify as an employee subject to the benefits of § 34a and the OMFWSA.

### 2. The district court correctly applied Federal Rule of Civil Procedure 56 and construed the facts in a light most favorable to Ellington

Ellington's second claim of error, that the district court did not construe the evidence in a light most favorable to him as required by Federal Rule of Civil Procedure 56, is also unavailing. Specifically, Ellington argues (1) that the district court's purported finding that he was both an employee of the City of East Cleveland and the

City Council precludes an award of summary judgment in favor of Defendants and (2) that the district court erred in not holding that a jury could have reasonably concluded that Defendants' assertion of the "legislative employee" exclusion as a defense to his federal and state-law claims was pretext for their actual motives for not paying him.

Ellington's first contention, that the district court erred in granting summary judgment after it purportedly found him to be jointly employed by the City of East Cleveland and the City Council, is a variation of an argument Ellington made in the lower court. That argument, made in the alternative to his primary contention that he was not a legislative employee, proceeded in two steps. First, he argued that he was a joint employee of the City Council and the City of East Cleveland because the City Council and the City were wholly distinct entities from each other. He then maintained that because he is an employee of both the City Council and the City, he was not fully excluded from FLSA coverage because the City was not a legislative branch or body. (*See* Pl.'s Br. Supp. Mot. Summ. J. 12.)

As the district court observed, accepting this faulty reasoning "allows the exception to the employer-employee relationship to be swallowed by the general rule." *Ellington*, 2011 WL 2149364, at *5. What Ellington perceives as a judicial finding in his favor is, in fact, the district court's explanation of why Ellington's joint employer argument eviserates the "legislative employee" exclusion. The district court stated:

> A deputy clerk of council is both an employee of a city and a legislative body, because the legislative body is technically a part of city government. Recognizing this, the FLSA "legislative employee" exception excludes an individual who is "employed by . . . [a] political subdivision of a State," *and* that political subdivision is a "legislative branch or legislative body."

*Id.* (alterations in original) (citations omitted) (citing 29 U.S.C. § 203(e)(2)(c)(ii)(V)). Indeed, the existence of and the relationship between the first and third elements of the "legislative employee" exclusion—that the individual must be both "employed by a State, political subdivision of a State, or an interstate governmental agency," 29 U.S.C.

§ 203(e)(2)(C), and also be an employee of a State's or political subdivision's legislative body, 29 U.S.C. § 203(e)(2)(C)(ii)(V)—accounts for Ellington's contention that he is employed by both the City Council and the City of East Cleveland. To conclude that Ellington, who has been found to be an employee of a legislative body, is covered by the FLSA because, as Deputy Clerk of Council, he is also part of the City of East Cleveland's workforce would effectively excise the FLSA's "legislative employee" exclusion. Such a conclusion is both unreasonable and not supported by the language of the exclusion.

Ellington has also likely forfeited his argument that Defendants invoked the "legislative employee" exclusion as pretext for their true motive behind failing to pay him his wages because he did not raise it in the district court. *See Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194 (6th Cir. 1992) ("The general rule is that the circuit court will not address issues on appeal that were not raised and ruled upon below."). Nonetheless, the fact that Defendants may have raised the exclusion after they failed to timely pay Ellington is not relevant in this case. As is discussed in greater detail above, Ellington is excluded from coverage under the FLSA and OMFWSA. Once exclusion from coverage is established, Defendants' motives or rationales for their actions are immaterial.

### III. CONCLUSION

We **AFFIRM** the district court's order granting summary judgment to Defendants.