ALAN E. NORRIS, Circuit Judge,
dissenting.
While I have never been a great fan of multi-factor tests, I agree with the Majority that the approach outlined in Donovan v. Brandel, 736 F.2d 1114 (6th Cir.1984), remains the law of our circuit. Brandel requires us to consider six factors when determining whether an individual serves a company as an employee or as an independent contractor for purposes of the. Fair Labor Standards Act of 1938 (“FLSA”), 29 U.S.C. § 201, et seq. Athough we are required to assess the individual considerations listed in Brandel, our task is not to focus on any single factor but rather to view the situation in its entirety so that we can answer this simple question: Is plaintiffs role with the company more akin to that of an employee or that of an independent contractor? See Brandel, 736 F.2d at 1116 (“the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity”). Yes, the FLSA is remedial in nature, Ellington v. City of E. Cleveland, 689 F.3d 549, 554-55 (6th Cir.2012); and, yes, the summary judgment posture of this appeal requires us to parse the record in a light most favorable to the non-moviiig party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That said, we must consider the undisputed evidence and decide, as a matter of law, Brandel, 736 F.2d at 1116, whether plaintiff raised a material issue of fact respecting his claim to be an employee as defined by the FLSA. In my view, the district court correctly concluded that he did not. For that reason, I respectfully dissent.
In this particular appeal, I find it instructive to observe that the same district court judge who ruled in the employer’s favor in this appeal denied summary judgment to an employer in a similar case involving individuals who installed cable television services. Swinney v. AMcomm Telecomm., Inc., 30 F.Supp.3d 629 (E.D.Mich.2014). These two cases highlight what Brandel instructs: that every case must be evaluated on its own facts; it is not a precise test; and, as here, fair minds may differ when applying the law to the undisputed record.
With respect to the first Brandel factor — the degree of permanency in the working relationship — the district court concluded that the undisputed evidence favored a finding that plaintiff worked as an independent contractor: he had no contract with Miri Microsystems, LLC; their working relationship was not exclusive inasmuch as he was able to work for other companies; and he arranged his own schedule. Keller v. Miri Microsystems, LLC, No. 12-15492, 2014 WL 1118446, at *6 (E.D.Mich. Mar. 20, 2014). By contrast, in Swinney, the court observed that plaintiffs’ deposition testimony confirmed that they had “a long and arguably exclusive relationship with Defendant,” which supported a conclusion that they were em *818 ployees despite the fact that they had “signed independent contract agreements.” Swinney, 30 F.Supp.3d at 634. In this case, the Majority focuses on plaintiffs contention that he had no time, due primarily to geography, to work for other companies. True, plaintiff lived in a rural part of Michigan where installation opportunities were limited. However, he was not obliged to accept every job offered by Miri. In short, he had sufficient control over his working relationship with Miri to render him an independent contractor. That he chose to accept a high number of jobs with the company speaks more to his own business decisions — where to live, how much money to earn — than those imposed by Miri.
The skill level possessed by an individual also affects our analysis: the greater the skill set, the more likely that a person is an independent contractor. As the Majority concedes, “There is ample evidence in the record to support a finding that satellite-dish-installation technicians are skilled workers.” Nevertheless, the Majority focuses upon the fact that the training required by HughesNet was brief and arranged by Miri. It then denigrates the skills required of an installer’s job, which it just conceded was “skilled”: “[Tjhis is not the type of profession where success rises or falls on the worker’s special skill ... a pole mount is a pole mount, a roof mount is a roof mount....” Perhaps the job lacks an opportunity for the “artistic flourish” that the Majority equates with skilled labor, but, in my view, the district court correctly concluded that the specialized technical training required coupled with “the transient nature of Plaintiffs employment history as an installer — working as an installer with ABC Dishman before doing so with Defendant LLC and continuing to provide HughesNet satellite installations after terminating those relationships — support the conclusion that he possessed ‘special skills’ that gave him the opportunity and flexibility to choose when to begin or end a working relationship.” Keller, 2014 WL 1118446, at *6.[1]
As the Majority rightly points out, the third Brandel factor contemplates the investment made by the worker in tools and other means of performing his job. Brandel, 736 F.2d at 1118-19. The more the worker personally invests in job-related equipment, the more likely it is that he is an independent contractor. In this case, plaintiff used his wife’s van when performing installations, a van that he had modified to accommodate computer equipment needed to track his jobs. In addition, he provided tools, a ladder, and his own cellular phone, which contained an “app” used for locating satellites and a credit card reader. He also, at Miri’s request, paid for general commercial liability insurance, which named Miri as an “additional insured.” See Keller, 2014 WL 1118446, at *7 (summarizing equipment).
Despite the investment made by plaintiff, the Majority concludes that the evidence, rightly weighed in a light most favorable to plaintiff, tilts in favor of a finding — or at least a jury question — that he was an employee. First, it discounts the use of his wife’s van and his cell phone on the theory that those investments served purposes beyond the scope of his employment. Second, it observes that “Miri made significant capital investments in its business.” While this statement is true, I am unsure how it factors into the analysis. In short, I respectfully draw a different conclusion from this ree- *819 ord: plaintiffs financial investment in work-related equipment was significant enough that he this factor weighs in favor of plaintiff being an independent contractor.
The fourth factor concerns the nature of the working relationship: how much control does the worker have over how he performs his job?_ As the district court noted, factors such as whether the company insists on a uniform, closely monitors the alleged employee’s performance, and the degree to which it, rather than the worker, controls scheduling, all contribute to the analysis of this issue. Keller, 2014 WL 1118446, at *7. In finding that this factor favored a conclusion that plaintiff was an independent contractor, the district court made the following observations: plaintiff could determine the number of jobs he would accept per day; the location of those jobs; and the manner in which he would perform the work as long as it conformed to the requirements of the satellite provider (which was not Miri). He could also change his schedule if necessary and decline to undertake jobs without adverse consequences for future jobs. In addition, he could, if he chose, employ helpers without the consent of Miri. In contrast to the instant case, the court in Swinney reached a different conclusion because “Defendant exercised substantial control over [plaintiffs’] days and ... Defendant used [a] chargebacks system not only as a quality control measure, but also to punish Plaintiffs for noncompliance with Defendant’s ‘rule’, e.g., arrival time, meetings, etc.” 30 F.Supp.3d at 638. I cite Swinney because it highlights how context-sensitive our inquiry is when trying to resolve the employer versus independent contractor question. As the two district court opinions discussed illustrate, the same judge can reach opposite conclusions when facts are sufficiently distinctive to call for a different result.
The fifth factor is whether plaintiff had an opportunity to control his profits. As mentioned earlier, plaintiff lived in a rural area and, by definition, installation jobs were often separated by some distance, making it difficult, if- not impossible, for him to complete more jobs than he appears to have been doing. However, as the district court recognized, his decisions regarding his location and the jobs that he chose to take were his alone. In theory, at least, he could have relocated and hired additional helpers. That he did not does not indicate that Miri’s actions kept plaintiff from increasing his profit: he retained control over the decisions affecting the nature of his income and he was, in this respect, an independent contractor.
Despite our cataloging of the various factors that inform our decision, in the end we must take a common sense approach and look at the situation in its entirety. Brandel, 736 F.2d at 1116. What does that show? Miri served as a middleman in the satellite installation business. The LLC had a single member: Anthony Miri. Its business plan was to work with individuals such as plaintiff who carry out the actual installations. Miri does not provide benefits to these individuals or withhold taxes. Nor does it enter into an employment contract with them. Plaintiff moved from providing installation services for another middleman, to Miri, and later to HughesNet directly, and provided additional products and services to customers directly while doing installations for Miri. It seems abundantly clear that both plaintiff and Miri intended that plaintiff be an independent contractor and conducted themselves accordingly. It is not clear what more the parties could have done that would have satisfied the Majority that plaintiff was an independent contractor. While simply labeling someone an independent contractor does not make him one, *820 Rutherford Food Corp. v. McComb, 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), for the reasons given by the district court and reiterated above, the record, which is not materially in dispute, indicates that plaintiff was an independent contractor as defined by the FLSA.
I respectfully dissent.

. In contrast, the same judge found this factor far less compelling in Swinney because the plaintiffs came to their employer without training and were provided training in an "on the fly” manner. Swinney, 30 F.Supp.3d at 636.