NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0078n.06

No. 16-1876

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 27, 2017
DEBORAH S. HUNT, Clerk

ANDREW SCADDEN, )
)
    Plaintiff-Appellant, )
)
        v. )                     ON APPEAL FROM THE
)                     UNITED STATES DISTRICT
OFFICER TODD WERNER, OFFICER JAMES )        COURT FOR THE EASTERN
TWARDESKY, OFFICER VIARS, )                 DISTRICT OF MICHIGAN
)
    Defendants-Appellees. )

BEFORE: GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge. Plaintiff Andrew Scadden had an altercation with his tenant that caused the tenant to call the police. Defendants—three officers working for the City of Warren, Michigan—responded to the call and arrested Scadden, who ultimately pled guilty to three charges related to the incident. Later, Scadden brought this suit alleging, in part, that the officers used excessive force when arresting him. When the discovery deadline passed in this case without Scadden's having deposed any defendant, the officers moved for dismissal and summary judgment on his claims. The district court granted the motion, holding that Scadden either lacked sufficient evidence to allow a reasonable jury to find for him or failed to state a claim on each count in his complaint. The court then denied Scadden's motion for reconsideration. We find no error in either order and thus affirm.

I

The little background available on Scadden's arrest comes from his plea-hearing transcript and his complaint. According to the complaint, in January 2013, Scadden's tenant brought illegal drugs into Scadden's house, prompting Scadden to order him to leave. Scadden's wife then "attempted to intervene." R. 1, Compl., PID 2. At some point, the tenant called the police. When the officers arrived, they allegedly broke down the front door, entered with their guns drawn, and told Scadden to "get the fuck on the ground." *Id.* Before Scadden complied, one officer, although Scadden cannot say which, "charged at him with a flying kick." *Id.* at 3. Scadden then fell unconscious and sustained severe injuries. He says that he spent thirty days in jail following the arrest.

Weeks later, Scadden pled guilty to three charges stemming from the incident: (1) attempting to possess a controlled substance; (2) attempting to resist and obstruct the police; and (3) a domestic violence charge. At his plea hearing, Scadden testified to the factual basis for his charges. He admitted the following: that he had two Vicodin pills in his pocket without a prescription when he was arrested; that he failed to comply with the officers' orders to get to the ground quickly enough; and that he grabbed his wife by her sweater in anger.

In January 2015, Scadden filed his six-count complaint with the district court. His first count alleged that the officers violated his Fourth and Fourteenth Amendment rights. Although the complaint never specified how the officers violated Scadden's rights, both parties and the district court treated this count as a claim that the officers used excessive force when arresting Scadden. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (identifying the Fourth Amendment's prohibition on unreasonable seizures as the constitutional source for an excessive-force claim). His remaining counts alleged various torts under Michigan law: assault and

battery, intentional infliction of emotional distress, false arrest, false imprisonment, and malicious prosecution. The officers responded by asserting qualified immunity as a defense to the federal claim and Michigan's qualified-immunity statute as a defense to the state claims. *See* Mich. Comp. Laws § 691.1407.

The district court set an initial discovery deadline for mid-August 2015. After the officers had trouble getting Scadden to comply with their request to answer interrogatories and produce documents, they moved the district court to compel his response. Scadden then complied and responded to the officers' motion, letting the court know that he resolved the issue. In the response, Scadden's counsel blamed the delays on problems caused by his paralegal leaving the firm. After this delay, the parties asked the court to move the discovery deadline to October 14, 2015 and the dispositive-motion deadline to November 12, 2015. The court granted their request.

The October cut-off came and went without counsel's having ever having deposed the officers or otherwise engaging in discovery. After this deadline, but before November 12, the officers moved for dismissal and summary judgment on Scadden's claims. After the district court received the officers' motion, it sua sponte granted Scadden leave to file an amended complaint. Scadden did not amend his complaint but responded to the motion, arguing, in part, that summary judgment would be premature because discovery was in "full swing" and was necessary to "discover the extent of each Defendant's participation." R. 24, Pl.'s Resp. to Defs.' Mot., Pages 3, 15, PID 156, 168.

The district court scheduled a hearing on the officers' dispositive motion for late April 2016. When the hearing started, Scadden's counsel had not yet arrived. After waiting about thirty minutes, the district court adjourned the hearing at the request of the officers' counsel.

Weeks later, without a new hearing, the court granted the officers' motion. As to five of Scadden's claims, the court reasoned that it would be impossible for a jury to find for him because Scadden offered effectively no evidence in response to the officers' motion. The court dismissed Scadden's malicious-prosecution count for failure to state a claim.

Scadden's counsel moved for reconsideration, offering excuses for his absence at the hearing and arguing that he needed more time for discovery. Along with his motion, he offered evidence that the parties had informally continued discovery after the original deadline and that he had scheduled the officers' depositions before the hearing but canceled them after the court's ruling. The court denied the motion. This appeal followed.

## II

As an initial matter, the officers question how far our jursidiction extends over this appeal. Although Scadden's docket entry for his notice of appeal mentions both the order granting summary judgment and the order denying his motion for reconsideration, the notice itself lists only the latter order. The officers suggest that Rule 3 of the Federal Rules of Appellate Procedure therefore limits the issues we may review on appeal to only those that Scadden presented for the first time in his motion for reconsideration. *See* Fed. R. App. P. 3(c)(1)(B) (requiring a party to "designate the judgment, order, or part thereof being appealed").

Even setting aside the fact that Scadden's reconsideration motion mostly rehashed the arguments he made in opposing the officers' dispositive motion, we are still satisfied that we have jurisdiction to consider issues related to both orders. The Federal Rules of Civil Procedure lack any procedural tool titled a "motion for reconsideration." Rather, a party may file a motion under Rule 59(e) to amend a judgment or under Rule 60(b) to seek relief from a final judgment. Where a post-judgment motion fails to identify its basis for challenging a judgment, yet falls

within the filing deadline set by Rule 59, we have considered it a Rule 59(e) motion. *See Hood v. Hood*, 59 F.3d 40, 43 n.1 (6th Cir. 1995); *Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010) (unpublished). And an appeal from an order denying a Rule 59(e) motion allows us to review the underlying judgment. *See Hood*, 59 F.3d at 43 n.1.; *Westerfield*, 366 F. App'x at 519 (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962) (holding that an appeal from a denial of a Rule 59(e) motion should have been construed as seeking review of the underlying judgment).

Here, Scadden's motion for reconsideration cited only the relevant local rule. His filing, however, fell within the 28-day window provided by Rule 59(e). Thus, we will construe his motion as one to amend the court's judgment and will consider his arguments related to the underlying summary judgment order.

III

Although Scadden frames his issues inartfully, he essentially provides three ways in which he conteds the court erred in granting the officers' motion and denying his motion for reconsideration.[1] First, he says that summary judgment was improper because he needed more time for discovery. Second, he contends that, timing aside, the officers were not entitled to summary judgment on the merits. Finally, he adds that he pled all of his claims with adequate factual and legal detail to survive a Rule 12(b)(6) motion. But Scadden's arguments fail because they either ignore his responsibilities in prosecuting his case or misstate the law.

---

[1] Scadden's briefing never differentiates between the two orders, treating his appeal as if it came solely from an order granting a motion for summary judgment and to dismiss. He never addresses the separate standards that the district court uses to analyze motions for reconsideration under Local Rule 7.1(h) or Rule 59 and Rule 60. *See Zucker v. City of Farmington Hills*, 643 F. App'x 555, 562 (6th Cir. 2016) (discussing the four limited grounds available for a Rule 59(e) motion and the "palpable defect" standard under Local Rule 7.1(h)). These are less favorable standards for Scadden. *See id.* At any rate, where de novo review of the underlying dispositive order shows no error, as is the case here, there is no error in a decision refusing to reconsider it. *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006).

A

To start, Scadden's desire for more discovery provides no basis to disturb the district court's rulings. It is true that a court may grant summary judgment based on the rationale that the non-movant lacks evidentiary support, as the district court did here on most of Scadden's claims, only if the non-movant had "a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th Cir. 1994)). "The non-movant bears the obligation to inform the district court of its need for discovery, however." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002).

Federal Rule of Civil Procedure 56(d) spells out how a non-movant should inform the court. The rule requires a nonmovant to show by affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition." Then, "the court *may*: (1) defer considering the motion or deny it; (2) allow time . . . to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (emphasis added).

The need to comply with Rule 56(d) "cannot be overemphasized." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Without a Rule 56(d) affidavit "or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery." *Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995) (citations omitted). And even when a party properly presents a Rule 56(d) affidavit and a motion to extend discovery, the rule only provides that a court "may" extend the discovery deadline. Thus, we review the decision "under an abuse of discretion standard" and only reverse if the decision denying further discovery was "arbitrary, unjustifiable, or clearly unreasonable." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623–24

(6th Cir. 2014). In so reviewing, we look to various factors but consider primarily whether the party seeking an extension was "diligent in pursuing discovery." *Id.* at 623 (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)).

Scadden responded to the summary judgment motion without ever filing a 56(d) affidavit or moving to extend discovery. To the extent his responsive briefing addressed the issue, it simply asserted that discovery was in "full swing," that no one had been deposed yet, and that he thought discovery might reveal "the extent of each Defendant's participation." The response never addressed the fact that the deadline had passed—let alone explained why Scadden had not yet pursued discovery. Scadden's failure to comply with 56(d) is reason enough to conclude that the district court did not abuse its discretion in granting the initial summary judgment motion, or denying his request for reconsideration, without allowing for more discovery.

Moreover, the district court had other reasons to find that Scadden lacked diligence in pursuing discovery. It was only in the motion for reconsideration that Scadden's counsel told the court that he was pursuing the officers' depositions. And the evidence he presented only showed that he started in December 2015—after the deadline had passed. He never discussed his efforts or supposed discovery issues with the court before the hearing on the officers' motion. Then he missed the hearing. Before the discovery deadline, *the officers* had to force *Scadden* to cooperate with their discovery efforts. On this record, the district court did not abuse its discretion because it could reasonably find that Scadden lacked diligence in pursuing discovery. Overall, Scadden had ample opportunity for discovery—he just never used it.

B

Given that the district court did not err in denying Scadden's request for more discovery, there was no error in its ruling on the merits. We review the district court's decision granting

summary judgment—and will review here the legal issues raised in Scadden's motion for reconsideration—de novo. *See Sommer v. Davis*, 317 F.3d 686, 690–91 (6th Cir. 2003). Scadden argues mainly that the officers failed to meet their summary judgment burden and some other underdefined burden purportedly thrust on them by his inability to identify the officer that kicked him.

His first argument misconstrues the law on summary judgment—the officers met their burden and Scadden failed to meet his. The moving party may meet its burden by highlighting an absence of facts or evidence to support a plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party does not need to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* Instead, a movant can "challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Where a movant asks for summary judgment, or dismissal in the alternative, it meets its initial summary judgment burden through its argument that a plaintiff has "failed to allege facts on which relief may be granted." *Jefferson v. Chattanooga Pub. Co.*, 375 F.3d 461, 463 (6th Cir. 2004).

Once the movant meets this burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (quotation marks omitted). Rather, it "must set forth specific facts" showing that there is a "genuine issue" for trial. *Id.* An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the officers asserted in their motion for dismissal or summary judgment that Scadden failed to "properly plead, either legally or factually, any of the claims." R. 14, Defs.'

Mot. to Dismiss, at 2, PID 107. Per *Jefferson*, this statement also met the officers' initial summary judgment burden. In response, Scadden merely rested on his allegations—something we have specifically said is insufficient. Further, without any evidence, a jury would necessarily lack a basis to return a verdict for Scadden. For example, as the district court noted, a jury could not rationally conclude that Scadden proved that some unknown officer's "flying kick" was "unreasonable" under the "circumstances" without any facts to provide context. *See* R. 26, Order Granting Defs.' Mot., at 5, PID 178. We do not need to rehash the grounds that the district court already covered in detail; it is enough to say we agree with the district court that the existing record would not allow Scadden to preponderate on any claim. *See id.* at 4–9, PID 177–82.

In an underdeveloped argument, Scadden tries to assert that the officers had some burden shifted on to them because Scadden could not identify who kicked him.[2] Scadden draws on *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959 (9th Cir. 2001), for support. In that case, the Ninth Circuit held that where a plaintiff makes out a prima facie case that officers unlawfully arrested her, the burden shifts to the officers to produce evidence supporting probable cause for the arrest. *Id.* at 965. This approach, the court noted, countered a city policy designed to "frustrate the efforts of potential plaintiffs in false arrest cases to establish lack of probable cause" by concealing arresting officers' identities. *Id.* at 964–65. The court found the shifting beneficial because the plaintiff "did everything she possibly could to identify the arresting officers," but the city stonewalled her along the way. *See id.* at 965.

---

[2] Scadden calls it a shift in the "burden of proof" at one point. Pl.'s Brief at 17. The case he relies on, however, discusses a shift in the burden of production following a prima-facie showing of an unlawful arrest.

To start, the Ninth Circuit has not extended this framework to excessive-force claims. *See Burley v. Gagacki*, 834 F.3d 606, 614 (6th Cir. 2016). And we recently rejected counsel's invitation to create a modified *Dubner* rule for such claims in this circuit. *See id.* at 615. In our opinion, we held out the possibility that shifting the burden of production *might* be appropriate in some circumstances. *Id.* at 615 n.5. If such circumstances exist, Scadden's case does not present them. No one stonewalled Scadden; he simply never asked any questions. Moreover, even if Scadden knew who kicked him, he would still have failed to adduce sufficient evidence to permit a jury to find for him on this claim.[3] Ultimately, the record Scadden left himself with provides no basis to disturb the district court's orders.

C

Finally, we find no error in the district court's decision to dismiss Scadden's malicious-prosecution claim. We review the dismissal of a claim under Rule 12(b)(6) de novo. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). The rule requires that we view the complaint in the light most favorable to the plaintiff, accept the complaint's allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). We do not, however, need to accept a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations themselves must "raise a right to relief above the speculative level"; a mere "formulaic recitation of the elements of a cause of action will not do." *Id.*

---

[3] We hold only that summary judgment was appropriate in this case—where discovery passed without defendant making an effort to determine who kicked him and under what circumstances and then presented no evidence on the issue. We express no opinion on whether an inability to allege up front which officer used excessive force justifies dismissal under Rule 12(b)(6).

Michigan courts have held that the "only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *Morningstar v. Worthy*, 454 F. App'x. 391, 405 (6th Cir. 2011) (quoting *Payton v. City of Detroit*, 536 N.W.2d 233, 242–43 (Mich. Ct. App. 1995)). As the district court noted, Scadden did not even allege such facts. Further, due to the lack of any factual allegations to this effect, the complaint never raises his right to relief on this claim above a speculative level.

## IV

Finding no error in the district court's orders, we **AFFIRM**.