KETHLEDGE, Circuit Judge, concurring.
One hopes that the Department of Labor simply failed to think through its position *769 in this case. Since initiating this litigation in 2015, the Department has argued, and the district court held, that volunteers at the Cathedral Buffet were in fact employees under the Fair Labor Standards Act-because, the Department says, their pastor spiritually "coerced" them to work there. That argument's premise-namely, that the Labor Act authorizes the Department to regulate the spiritual dialogue between pastor and congregation-assumes a power whose use would violate the Free Exercise Clause of the First Amendment.
By way of background, the Grace Cathedral Church operated the Cathedral Buffet, a nominally for-profit corporation that in fact never turned a profit, and that the church heavily subsidized (by more than $1 million between 2012-16). Instead, the record makes clear, the Buffet's purpose was to allow the church's members to proselytize among local residents who dined there. Although the Buffet had 35 full-time paid employees-all of whom, incidentally, have lost their jobs as a result of this lawsuit, see Gov't Br. at 36 & n.13-much of its work was performed by volunteers from the congregation.
In the district court, the Department obtained injunctive relief and about $388,000 in damages on the theory that these congregants were employees (rather than volunteers) under the Act. Normally that determination is governed by economic criteria: whether the workers are economically dependent upon the defendant, whether the defendant can hire or fire them, whether the defendant substantially controls the terms and conditions of the work. See Ellington v. City of East Cleveland , 689 F.3d 549, 555 (6th Cir. 2012). Here, per those criteria, the congregants are not employees, as our opinion today makes clear. But here the Department has divined spiritual criteria as well: "during Church services[,]" the Department contends, Rev. Angley "exerted undue pressure and influence upon the volunteers" by telling the congregation that a failure to volunteer would be "the same as failing God," and that "God is not pleased" with congregants who did fail. Gov't Br. at 40. Thus, the Department says, putative spiritual coercion can be a stand-alone basis for fines and injunctive relief under the Act.
One can agree that the Reverend's comments were in poor taste, and yet see that the Department has no business regulating them. For the power that the Department purports to exercise here is out of bounds even under Employment Div. v. Smith , 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). There, of course, the Court held that a neutral law of general applicability does not violate the Free Exercise Clause when the law burdens religious exercise only incidentally. Id. at 879, 110 S.Ct. 1595. But here the Department's actions meet none of those criteria. The Department seeks to regulate spiritual conduct qua spiritual conduct, and to impose significant liability as a result. The very criterion by which the Department would impose liability is expressly spiritual. Hence this is not a case, like Smith , where illegal conduct (there, smoking peyote) remained illegal even though it was religiously motivated. Instead, the Department's position here is that otherwise legal conduct-such as volunteering at a church restaurant-becomes illegal if the worker's pastor spiritually pressures her to engage in it. (Under this regime, one supposes, whether a pastor can invoke the Book of James-"a person is justified by works and not by faith alone[,]" James 2:24-might be determined on a case-by-case basis.) The Department's actions therefore "target[ ] religious conduct for distinctive treatment[,]"
*770 Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah , 508 U.S. 520, 534, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) ; and their burdens upon religious exercise would come by design.
Nor is the Department even competent to make the spiritual judgment it purported to make here. "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Hernandez v. Comm'r of Internal Revenue , 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). That same idea of centrality perforce lies beneath any judgment about spiritual coercion. And bureaucrats are no better than judges at making that judgment. Hence it is beyond the ken of federal agencies, or the courts, to determine that congregants were spiritually coerced even though the congregants themselves say they were not-which is what 134 members of Grace Cathedral said under oath here.
Thus, the coercion that matters is not anything that Rev. Angley said to his congregation on a Sunday morning. What matters, rather, is the Department's own attempt to coerce religious leaders-of any faith-not to exhort their followers on spiritual grounds to engage in conduct that is otherwise legal. For "the Free Exercise Clause protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." Trinity Lutheran Church of Columbia, Inc. v. Comer , --- U.S. ----, 137 S.Ct. 2012, 2022, 198 L.Ed.2d 551 (2017) (internal quotation marks omitted). The coercion here would take the form of a check in the amount of $388,507.90, "payable to 'United States Department of Labor-Wage and Hour Division[.]' " Judgment and Order Regarding Injunction at 2. That coercion affects not only Rev. Angley-who along with the Buffet was ordered to pay that amount-but also the congregants themselves; since, even if they return any moneys to Angley or the Buffet, "Defendants shall immediately remit such amount to the U.S. Department of Labor[.]" Id . at 3.
What is perhaps most troubling about the Department's position in this case, however, is the conceit of unlimited agency power that lies behind it. The power of a federal agency is no more than worldly. The Department should tend to what is Caesar's, and leave the rest alone.